RAFAEL NARVÁEZ, demandante y recurrido, *v.* THE CHASE MANHATTAN BANK N.A., demandado y recurrente.

*Número:* CE-87-100    *Resuelto:* 30 de marzo de 1988

732

*Pedro J. Salicrup, José Luis Verdiales Morales*, de *Fiddler, González & Rodríguez*, abogados del recurrente; *José L. Hidalgo Irizarry*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Rafael Narváez presentó en el Tribunal de Distrito, Sala de San Juan, una querella contra el Chase Manhattan Bank (en adelante Chase). Alegó que fue despedido injustificadamente de su empleo en contravención a la Ley de Despido Injustificado, Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185 *et seq.*). Reclamó una compensación por despido que estimó en $4,992, más las costas, los gastos y honorarios de abogado.

En la contestación a la querella, el patrono levantó, entre otras, la defensa afirmativa siguiente:

2. El despido del querellante estuvo justificado a la luz de las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976. Constituye justa causa para su despido, su actitud como Supervisor de no rendir su trabajo en forma eficiente o hacerlo tardía y negligentemente, en violación a las normas de operación aplicables a la industria bancaria en general y a la Institución querellada en particular. Incurrió además, en violación a las Reglas y Reglamentos establecidos para el funcionamiento de la Institución.

Se incorporan por referencia a esta contestación tres (3) memorandos dirigidos por la querellada al querellante fechados

respectivamente, a 23 de diciembre de 1982, 26 de enero de 1983 y 25 de febrero de 1983 que ilustran por vía de alegación los hechos que dieron lugar al despido del querellante. 29 L.P.R.A. 185(j).

También se alega afirmativamente que el querellante fue objeto de evaluación que acredita las anteriores actuaciones, así como de otros documentos pertinentes que habrán de surgir a través del procedimiento de descubrimiento de prueba y que acusan deficiencias del querellante en lo referente a su desempeño como supervisor para la querellada en las áreas de planificación, control, relaciones humanas, organizaciones y en las responsabilidades generales que se esperan de un supervisor en sus circunstancias. Contestación a la Querella, Ap. 2, págs. 2–3.

La vista del caso se celebró el 8 de octubre de 1984. El tribunal le concedió un término a las partes para someter memoriales de derecho para orientarlo sobre la prueba presentada y la jurisprudencia aplicable. La querellada presentó un extenso alegato. Como el querellante no cumplió lo ordenado, el caso quedó sometido a la consideración del tribunal, el cual dictó sentencia en la que declaró con lugar la querella y ordenó al Chase a pagar la suma de $3,774 más $561.60 de honorarios de abogado. El Chase apeló al Tribunal Superior, Sala de San Juan.

Perfeccionado el recurso, el Tribunal Superior confirmó la sentencia de instancia. En apoyo de su dictamen, el tribunal apelativo adujo que:

Luego de estudiar el expediente completo a la luz de los alegatos de las partes, resolvemos que no se justifica el que este Tribunal intervenga con la sentencia dictada en el caso por el Tribunal de Distrito. Nos parece razonable la interpretación del estatuto adoptada por dicho Tribunal al efecto de que no constituye justa causa para el despido la pobre calidad del trabajo de un empleado, cuando esa situación ha sido provocada por el propio patrono al ascender al empleado a un puesto para el cual el empleado no estaba realmente cualificado. Cuando el patrono se percató de que el ascenso había

sido un error pudo evitar las penalidades que impone la ley por despido injustificado devolviendo al empleado al puesto que ocupaba antes del ascenso, pues no está en disputa que en ese puesto anterior el empleado se desempeñaba muy efectivamente.[1] Pero en tales circunstancias el despido realmente no se podía justificar. (Cita omitida.)

[1] Véase por analogía el inciso (7) de la sección 4.6 de la Ley de Personal de Servicio Público, 3 L.P.R.A. [sec.] 1336. Sentencia de 13 de enero de 1987, Ap. 8, pág. 60.

Aunque originalmente denegamos la solicitud para revisar los procedimientos, examinada la moción de reconsideración del patrono, el 9 de abril de 1987 acordamos revisar. Con el beneficio de los alegatos de las partes, estamos en posición de resolver.

Este es un caso muy peculiar, ya que los jueces de instancia admiten y parten de la premisa de que el empleado fue ineficiente; que la calidad de su trabajo como supervisor era de pobre calidad; que no seguía las normas de la empresa; que no tenía liderato; que fue evaluado en varias ocasiones; que su ineficiencia causó cuantiosos daños económicos al banco, y que a pesar de ello se le dieron nuevas oportunidades para mejorar su labor, las cuales no pudo o no supo aprovechar.[1]

No obstante lo anterior, el Tribunal de Distrito resolvió como cuestión de derecho que:[2]

---

[1] Estas circunstancias surgen de las determinaciones de hechos del Tribunal de Distrito y de la Relación del Caso que aprobara dicho tribunal como parte del trámite apelativo al Tribunal Superior.

[2] En sus Determinaciones de Hechos dicho tribunal señaló que:

"La parte querellante, Rafael Narváez comenzó a trabajar con el Chase Manhattan Bank, N.A., el día 11 de febrero de 1970. Hasta este momento había desempeñado bien sus funciones. El Chase Manhattan Bank tiene un Departamento de Cobros con 4 secciones, cada una a cargo de un Supervisor. En 25 de enero de 1982, el querellante fue promovido a dirigir una de ellas, la de Bank Car and Insurance Claim. En esta Sección trabajaban 4 empleados que el querellante tenía a su cargo y entre sus deberes como supervisor estaba la de [s]upervisar el personal de su oficina a cargo, incluyendo mantener la moral del grupo de tra-

... La falta de liderato y de control en la operación del Departamento a su cargo y la ineficiencia del querellante en el

bajo, dirigir y asignar trabajo, evaluar a sus empleados y velar por que las tareas de su Departamento se cumplieran satisfactoriamente.

"El Departamento que dirigía el querellante tenía las funciones siguientes:

"A. Vender los automóviles que el Banco reposeía.

"B. Someter las reclamaciones a las distintas Compañías de Seguro por concepto de pólizas (single interest).

"C. Efectuar reclamaciones por préstamos garantizados F.H.A. y de estudiantes.

"D. Efectuar el trámite de 'write off' y/o 'Charge off' que consiste en clasificar como morosos los préstamos luego de transcurridos 90 a 150 días, según fuera el caso, después del incumplimiento de pago.

"El querellante era un empleado que nunca antes había tenido experiencia ni conocimiento alguno de supervisión. La posición le fue ofrecida allá para el mes de noviembre de 1981 y no fue hasta enero de 1982 que decidió aceptarla. Se le di[o] un adiestramiento relacionado con el área de trabajo de su Departamento, pero nunca se le di[o] adiestramiento específico en el área de supervisión, a pesar de que el querellante lo solicitó. No fue hasta agosto de 1982 que el querellante fue evaluado. En esa evaluación se encontró que el querellante no estaba desempeñándose como el Banco esperaba. Desde entonces comenzaron evaluaciones periódicas que terminan con su despido en 2 de marzo de 1983.

"Aunque en la carta de despido que se le envió al querellante en 2 de marzo de 1983 no se exponen las razones del mismo, la prueba establece que se le despidió porque el Banco no estaba satisfecho con el trabajo que hasta entonces había realizado como Supervisor del Departamento asignado. Debemos de anotar que al querellante además de liquidársele las vacaciones acumuladas, se le entregó un cheque por $1,164.23, según el Banco a manera de ayuda mientras gestiona otro empleo, que es el equivalente a un mes de sueldo, luego de los correspondientes descuentos, pues al momento de su despido el querellante devengaba un sueldo de $1,248.00 mensuales.

"La evaluación total de la prueba permite a este Tribunal concluir que como cuestión de hecho el Banco cometió un serio error de juicio al nombrar al querellante a la posición de Supervisor del Departamento de 'Bank Car and Insurance Claim', pues dicho empleado ni estaba capacitado ni fue debidamente preparado para desempeñar la función. A ello debemos de añadir que según surge de la prueba, de los cuatro empleados que se desempeñaban en el Departamento que dirigía el querellante, uno de ellos estuvo ausente por vacaciones como mes y medio y otro se ausentaba con frecuencia más de lo usual por razones de enfermedad y ello en conjunto explica las razones de deficiencias señaladas al Departamento a cargo del querellante que consisten fundamentalmente en (1) no rendir informes a tiempo requerido (2) deficiencias en el procedimiento de tirar préstamos a 'charge off' (sobre este extremo la prueba establece que se dejó de tirar a 'charge off' préstamos por una cantidad aproximada de $150,000), (3) falta de control en la operación y manejo del Departamento a cargo." Sentencia del Tribunal de Distrito, Ap. 4, págs. 23–25.

desempeño de sus funciones es atribuible a que no estaba preparado para dirigir dicho Departamento. Era por eso que el propio querellante pedía al Patrono adiestramiento en el área de supervisión o en la alternativa que se le cambiara a otra posición. El Banco optó por despedirlo. *Hemos señalado que el error de juicio en la selección de un empleado para un puesto en particular no es razón de justa causa para su despido a la luz de lo dispuesto en la Sección 185b de la Ley Núm. 80.* (Énfasis suplido.) Sentencia del Tribunal de Distrito, Ap. 4, págs. 26–27.

El Tribunal Superior fue más lejos que el de instancia al aplicarle, por analogía, a una relación obrero-patronal enteramente privada el inciso (7) de la Sec. 4.6 de la Ley de Personal de Servicio Público, 3 L.P.R.A. sec. 1336(7), que dispone lo siguiente:

(7) Se podrá separar de su puesto a un empleado de carrera durante el período probatorio cuando se considere que sus servicios, hábitos o actitudes no justifican concederle *status* de empleado regular. Si por razón de sus servicios, y no por hábitos o actitudes, el empleado fuere separado de su puesto durante el período probatorio o al final del mismo, y hubiere servido inmediatamente antes de su nombramiento como empleado regular en otro puesto tendrá derecho a que se le reinstale en un puesto en la misma clase, o en una clase similar, del que ocupaba con *status* regular, conforme se establezca mediante reglamento.

Al aplicar en esa forma la Ley de Despido Injustificado y su jurisprudencia interpretativa a los hechos particulares de este caso, ambos tribunales incidieron.

■■ Recientemente resolvimos que el despido de un supervisor fue justificado por razón de su incompetencia y falta de capacidad para controlar la situación. En *Báez García* v. *Cooper Labs., Inc.*, 120 D.P.R. 145, 151–153 (1987), apuntalamos que:

El más profundo respeto hacia las disposiciones constitucionales y estatutos que garantizan y protegen los derechos de los trabajadores puertorriqueños, nos impiden refrendar su tesis. La Ley de la Mesada, si bien establece una indemnización para todo empleado contratado sin tiempo determinado, se apuntala en que el despido sea sin justa causa. Su Art. 2 contiene guías orientadoras al respecto. Constituye justa causa para el despido:

(a) Que el obrero siga un patrón de conducta impropia o desordenada.

(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. . . . 29 L.P.R.A. sec. 185b.

Al enumerar las posibles circunstancias, el legislador concrecionó unas situaciones que sirvieran de norte a los tribunales en los casos en que se invocara esta ley. Aun así, al valorar esa dinámica en una relación típica obrero-patronal, en el Art. 8 determinó imponerle a todo patrono la carga probatoria de justificar en la afirmativa su actuación, exponiendo en la contestación a una querella los hechos que dieron origen al despido. 29 L.P.R.A. sec. 185k.

En el caso de autos, Cooper cumplió satisfactoriamente con esa exigencia desde el inicio del trámite. Mediante prueba testifical y documental estableció la incompetencia de Báez García para desempeñar cabalmente la plaza de Gerente de Personal. No hay el más mínimo indicio de que actuara festinada o improvisadamente. Cuando las funciones de la plaza se tornaron más complejas, Báez García no pudo controlar la situación. En lugar de prescindir de sus servicios, Cooper le brindó la oportunidad de continuar en la compañía como Director de Relaciones con los Empleados y la Comunidad y, luego de reorganizar la Oficina de Personal, le permitió ocupar nuevamente su antigua posición de Gerente de Personal. Simplemente la idea no funcionó. Su desempeño no fue satisfactorio. Aun así, en octubre de 1979, se le volvió a nombrar al puesto de Director de Relaciones con los Empleados y la Comunidad. (Escolios omitidos y énfasis suprimido.)

Según lo anterior, allí resolvimos que:

En resumen, esta evidencia en unión a otra derrotan la tesis propuesta por Báez García de que la empresa estuvo preparándole un caso en su contra con cuatro o cinco años de anticipación. Todas las circunstancias apuntadas nos mueven a coincidir con el foro de instancia de que su despido no fue caprichoso ni abusivo. En términos jurídicos, el patrono Cooper demostró satisfactoriamente justa causa para el despido, pues fue el resultado de una "transacción lícita y en el curso de los negocios", *Avilés* v. *Corte*, 69 D.P.R. 1 (1948), como consecuencia de la incompetencia en el desempeño de Báez García. *Blanes* v. *Tribunal de Distrito*, 69 D.P.R. 113 (1948). Que prescindiera de sus servicios —después de reinstalarlo al puesto de Gerente de Personal— no altera el dictamen. Cooper ofreció una "cristalina justificación" para despedirlo. *Srio. del Trabajo* v. *I.T.T.*, 108 D.P.R. 536 (1979). *Báez García* v. *Cooper Labs., Inc.*, supra, pág. 154.

■ Según las circunstancias presentes, forzoso es concluir que el patrono cumplió con su deber de probar que hubo justa causa para el despido del recurrido. No hay funda-

mento para resolver que su despido fue caprichoso y abusivo. Fue una decisión fundada en las necesidades de la empresa que podemos refrendar como una "transacción lícita y en el curso de los negocios".

■ Aceptar la tesis en que se amparan las decisiones de instancia en el sentido de que por el hecho de que un patrono cometa un error de juicio al ascender a un empleado le impide despedirlo a menos que esté sujeto a las penalidades de la ley, estaríamos apartándonos del texto y del espíritu de la ley. Consecuencia lógica de dicho razonamiento es que los patronos también serían responsables por similares errores de juicio al emplear en primera instancia a un obrero o empleado.

De sostenerse la decisión recurrida, podrían afectarse negativamente los propios empleados que la ley quiere proteger, ya que los patronos podrían estar renuentes a darles la oportunidad de ascenso a menos que estén seguros de que éstos puedan ejercer sus nuevas responsabilidades eficientemente.

■ Por último, resulta evidente que aplicarle a las empresas privadas los principios del servicio de mérito que cobijan a los empleados públicos, para obligarles a devolver a su anterior empleo a aquellos supervisores que no cumplen sus nuevas responsabilidades eficientemente, trastocaría todo el sistema económico del país. No debemos olvidar que las relaciones obrero-patronales en los sectores industriales, agrícolas, comerciales, de servicios y actividades similares están adecuada y ampliamente reglamentadas por el Gobierno local y federal. En muchos de los casos también las relaciones obrero-patronales están regidas por los convenios colectivos. No es necesario, para resolver esta controversia, ampliar las protecciones del empleado por fíat judicial para equiparar al empleado público.

*Se dictará sentencia de conformidad a lo aquí expuesto.*

El Juez Asociado Señor Rebollo López concurre sin opinión escrita. El Juez Asociado Señor Negrón García se inhibió.

