# 95 DTA 179

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE MAYAGUEZ Y AGUADILLA

INES TORO MONTALVO
Apelada

v.

CADILLAC INDUSTRIES INCORPORATED
Apelante

Núm. KLAN-95-00156

San Juan, Puerto Rico, a 20 de junio de 1995

Panel integrado por su presidente, Juez Brau Ramírez
y los Jueces Colón Birriel y Rodríguez-Maldonado

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

El presente recurso de apelación fue presentado el 17 de septiembre de 1993 ante el Tribunal Superior, Sala de Mayaguez, y posteriormente referido a este Tribunal, conforme el artículo 9.004(b) de la Ley de la Judicatura de Puerto Rico de 1994 y la Orden Administrativa Núm. XIII del 23 de enero de 1995 del Juez Presidente del Tribunal Supremo de Puerto Rico.

Se recurre de una sentencia emitida el 3 de agosto de 1993 por el Tribunal de Distrito, Sala de Mayaguez, declarando con lugar la reclamación por despido injustificado presentada por la apelada Inés Toro Montalvo contra la apelante Cadillac Industries Incorporated *("Cadillac Industries")*. El Tribunal condenó a la apelante a pagar seis mil seiscientos noventa dólares

($6,690.00) a la apelada por concepto de la mesada establecida por Ley, además del pago de quinientos dólares ($500.00) por concepto de honorarios de abogado.

## II

Según se desprende de los autos, la apelante es una corporación dedicada a la manufactura de camisas y pantalones. La apelada fue empleada de Cadillac Industries por más de 19 años, desde el 6 de marzo de 1972 hasta el 4 de septiembre de 1991. Durante dicho período se desempeñó en varias funciones, comenzando como operaria hasta llegar a ser supervisora general de producción, puesto que ocupaba antes de cesar en su trabajo y en el cual devengaba un salario semanal de trescientos dólares ($300.00). Entre sus funciones como supervisora general de producción estaba el velar porque la producción de la empresa se rindiera conforme a las exigencias de calidad de la planta y aquellas reconocidas por la industria.

El cese de sus funciones se produjo a consecuencia de un incidente acontecido el 4 de septiembre de 1991. Para esa fecha, estaban ocurriendo problemas en el área de producción de camisas, las cuales estaban siendo devueltas a la compañía por mala calidad, específicamente porque los cuellos estaban saliendo mal hechos.

Ese día, mientras llevaba a cabo sus funciones de supervisión del taller de trabajo, la apelada recibió una queja del departamento de calidad de que una de las empleadas bajo su supervisión había hecho varias camisas y que todas habían resultado defectuosas. Ante la queja de la operaria de que el producto no resultaba adecuado, la apelante se ubicó en la máquina de la operaria y procedió a verificar la manera en que se estaba haciendo el trabajo y a enseñarle a la operaria como hacer el cuello. Según la versión de la apelada, ésta sólo invirtió diez (10) minutos en dicha operación, luego de lo cual se levantó y se fue a atender otros asuntos.

El señor Jorge Bonet, asistente al gerente general de Cadillac Industries, observó a la apelada realizando la anterior gestión. Según la versión de éste, la apelada estuvo realizando tareas manuales en la máquina de la operaria por espacio de cerca de una hora. Más tarde cuando ésta había terminado, el Sr. Bonet la llamó en privado y la reprendió, ya que, a su entender, *"la empresa no podía darse el lujo de tener una empleada que recibía la paga de ella, haciendo funciones que le competían a una operaria"*.

Molesta ante este señalamiento, la apelada replicó que ella entendía que lo que había hecho caía dentro de sus responsabilidades. Se desarrolló, entonces, una discusión entre los dos supervisores. La apelada le indicó al Sr. Bonet que habría de aclarar el asunto con el Sr. Víctor Gutiérrez, gerente general de la empresa. El Sr. Bonet replicó que, en ese caso, debían acudir a la oficina del Sr. Gutiérrez. La apelada estaba afectada y llorosa.

Al llegar a la oficina del Sr. Gutiérrez, la apelada supuestamente le dijo a éste que venía a renunciar. El Sr. Gutiérrez le manifestó que lo tomara con calma y que discutieran lo acontecido. Estaba presente, además de la apelada, el Sr. Bonet.

La apelada y el Sr. Bonet expusieron al Sr. Gutiérrez su desacuerdo. El Sr. Gutiérrez concedió la razón a este último, manifestándole a la apelada que el llevar a cabo trabajo de este tipo no era parte de sus funciones, sino que lo que hubiera procedido era que la apelada hubiera llamado a la entrenadora para que instruyera a la empleada en el manejo del equipo.

Ante esta reprimenda, la apelada irrumpió en llanto. De seguido les dijo que *"en esas circunstancias es imposible que yo haga un buen trabajo y ustedes me están obligando a que yo renuncie"*. El Sr. Gutiérrez, ante este comentario, instruyó a otra empleada que le trajera el formulario de renuncia de la compañía y, cuando se lo habían traído, se lo entregó a la

apelada. Al serle entregado el formulario de renuncia, la apelada *"lo firmó con tanto coraje que lo rompió"*. La apelada insistió sollozando, no obstante, que quería renunciar de la compañía.

El Sr. Gutiérrez intentó calmar a la apelada, diciéndole que *"no debía tomar esa decisión por un mero coraje por qué siempre iban a existir diferencias de criterio en cuanto al trabajo pero que esa no era razón para renunciar"*. Le indicó que se fuera a su casa, se calmara y lo pensara. Le pidió que tomara el número de teléfono de él. Según su versión, el Sr. Gutiérrez le manifestó a la apelada que él habría de esperar hasta las 8:00 p.m. La apelada replicó que ella tenía su número, pero que no lo iba a llamar porque su decisión de renunciar era definitiva. La apelada continuó sollozando y posteriormente se retiró de la oficina.

La apelada no llamó al Sr. Gutiérrez esa noche. Tampoco compareció a su trabajo al día siguiente. En su lugar visitó un doctor, quien le recetó medicamentos para calmar sus nervios y quien le sugirió comparecer al Fondo del Seguro del Estado por su condición emocional. Al no presentarse la apelada a la fábrica, Cadillac Industries procedió a dar su empleo por terminado. Previo a dicha determinación, la compañía no intentó verificar la condición de la apelada ni se le volvió a llamar para que cumplimentara el formulario de renuncia.

El viernes 6 de septiembre de 1991, la apelada tampoco asistió a la fábrica, sino que permaneció en su casa descansando. Ese día, en una reunión de los supervisores de Cadillac Industries, se acordó sustituir a la apelada de su puesto de supervisora general de producción por otra empleada de la empresa. La apelada tampoco compareció a trabajar el sábado 7 de septiembre de 1991, el cual era un día laborable para la compañía.

El 9 de septiembre de 1991, sin saber que había sido sustituida en su puesto, la apelada se presentó a la fábrica de Cadillac Industries con una excusa médica por los tres días (jueves, viernes y sábado) que había estado ausente. En dicha fecha le entregaron copia de una carta fechada de 5 de septiembre de 1991 suscrita por el Sr. Gutiérrez, donde se expresaba lo siguiente:

*"El día 4 de septiembre, luego de haber conversado con usted y el Sr. Jorge Bonet sobre su actitud en el trabajo. [sic] Usted nos manifestó que renunciaba efectivo inmediatamente. Yo le pedí que no lo hiciera, que lo pensara, pero usted insistió que no lo iba a pensar que ya estaba decidido, que le diera el papel de renuncia. Yo se lo di y le dije que iba a esperar hasta las 8 de la noche de ese día en mi casa y que si usted no llamaba, quedaba confirmada su renuncia. Al día siguiente no se presentó ni llamó, al contrario se despidió de algunos empleados y le expresó que había renunciado.* ■

*Por tal razón y en vista de que su vacante es de suma importancia, procedimos a hacer las gestiones necesarias y cubrimos su vacante ya que entendimos usted ha renunciado.*■

*Respetamos su decisión y le deseamos éxito en el futuro."*

Inmediatamente la apelada manifestó que no había renunciado a su empleo y que su intención era continuar trabajando para la compañía, pero que necesitaba ser referida al Fondo del Seguro del Estado por estar padeciendo de un grave problema de tensión emocional. Luego de varios trámites, la apelante accedió a darle el referido al Fondo del Seguro del Estado pero señaló en éste que la apelada había renunciado a su empleo. Posteriormente se determinó por el Fondo del Seguro del Estado que la condición de la apelada no estaba relacionada con el trabajo.

La apelada solicitó del Departamento del Trabajo y Recursos Humanos beneficios de compensación por desempleo bajo la Ley de Seguridad de Empleo de Puerto Rico, según

enmendada, 29 L.P.R.A. secs. 701 y ss. Dicha solicitud fue denegada por la agencia al determinarse por el árbitro del Negociado de Seguridad de Empleo que la apelada estaba descalificada por haber renunciado a su trabajo voluntariamente, sin justa causa. 29 L.P.R.A. sec. 704(b)(2).

La apelada instó entonces la presente demanda por despido injustificado contra Cadillac Industries reclamando la mesada que dispone la Ley. La compañía contestó y alegó como defensa afirmativa que la apelante no había sido objeto de un despido sino que había renunciado voluntariamente, *"no obstante habérsele pedido que reflexionara, y habérsele dado tiempo para ello."* Además, planteó que el hecho de la renuncia había sido adjudicado por el árbitro del Departamento del Trabajo y Recursos Humanos en su resolución sobre descalificación de beneficios de compensación por desempleo y que dicha determinación constituía cosa juzgada.

Luego del juicio en su fondo de la causa, el Tribunal de instancia declaró con lugar la demanda. Concluyó que:

*"No hemos creído que efectivamente se haya producido una renuncia, lo que entendemos es que el patrono prefirió o pretendió hacer creer a este tribunal de la existencia de una renuncia, cuando lo que a todas luces sucedió fue el aprovechamiento por parte de éste de unas circunstancias para dar por terminado el empleo de la querellante para con la empresa y justificarlo en función de una pretendida renuncia, que nunca ocurrió."*

El Tribunal añadió:

*"En el presente caso el patrono no descargó el peso probatorio de justificar el despido de la parte querellante, tal cual lo entendió este tribunal, pues a pesar que éste adujo en su defensa que lo que se había manifestado era una renuncia, este tribunal no aceptó ni el patrono pudo probar que efectivamente hubiera ocurrido una renuncia."*

Durante el proceso, se admitió en evidencia la resolución del árbitro como parte del expediente de trabajo de la empleada. El Tribunal, sin embargo, no le concedió efecto de cosa juzgada sobre la determinación de la renuncia.

Inconforme con la determinación del foro de instancia, la parte apelante presentó el presente recurso de apelación.

## III

En su recurso, la apelante señala la comisión de varios errores. En síntesis, plantea que el tribunal erró al imponerle el peso de la prueba a la apelante, en su apreciación de la prueba y al no otorgarle efecto de cosa juzgada a la resolución del árbitro del Departamento del Trabajo y Recursos Humanos. No tiene razón.

La Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a y ss. (Supl. 1994), confiere a todo empleado contratado sin tiempo determinado, que fuere despedido sin justa causa, el derecho a recibir de su patrono, en adición al sueldo que hubiera devengado, una indemnización correspondiente a un mes de sueldo y una indemnización progresiva adicional equivalente a una semana por cada año de servicio. 29 L.P.R.A. sec. 185a (Supl. 1994). La Ley requiere que, en toda acción entablada por un empleado reclamando los beneficios bajo la misma, el patrono alegue, en su contestación a la demanda, los hechos que dieron origen al despido y pruebe que el mismo estuvo justificado para quedar eximido del pago de la indemnización. 29 L.P.R.A. sec. 185k (Supl. 1994). De esta manera, se establece una presunción que el despido fue injustificado y recae sobre el patrono el peso de la prueba para rebatirla, mediante la preponderancia de la evidencia. Véanse, *Delgado*

*Zayas v. Hospital Interamericano de Medicina Avanzada,* ___ D.P.R. ___ (1994), **94 J.T.S. 149**, pág. 500; *Rivera Aguila v. K-Mart de P.R.,* 123 D.P.R. 599, 610 (1989).

En el presente caso, Cadillac Industries intentó rebatir la presunción mencionada argumentando que la apelada había renunciado a su trabajo voluntariamente. No obstante, el Tribunal de instancia concluyó, luego de evaluar la prueba desfilada, que la parte apelante no había conseguido establecer la existencia de una renuncia, sino que la parte apelante había intentado aprovecharse del incidente en cuestión para destituir a la apelada.

No estamos en posición de intervenir con esta determinación. La apreciación de la prueba realizada por un juzgador de instancia merece nuestra deferencia. *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172, 181 (1985). En ausencia de pasión, perjuicio, parcialidad o error manifiesto, un tribunal apelativo no habrá de alterar las determinaciones de hecho formuladas por el Tribunal de instancia. *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 14 (1987); Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R 43.

En el presente caso, coincidimos con el Tribunal de Instancia en que la prueba de la renuncia no fue cristalina. Véase, *Srio. del Trabajo v. I.T.T.,* 108 D.P.R. 536, 547 (1979). En efecto, no se presentó formulario alguno de renuncia, pese a que era la práctica de la compañía requerir que los empleados suscribieran uno. Aunque la explicación de la parte apelante en torno a esta omisión fue que la apelada rompió el formulario al firmarlo, por el coraje que tenía, esta justificación no abona a los méritos de su defensa.

Al contrario, según se desprende del récord ante el foro de instancia, la aludida *"renuncia"* de la apelada tuvo como trasfondo un incidente entre ésta y los Sres. Gutiérrez y Bonet, en el cual la apelada fue reprendida por haber asumido funciones ajenas a las de su cargo. No existe controversia alguna entre las partes que la apelada se afectó profundamente por este incidente. Aunque la reacción de la apelada pudo haber sido fuera de proporción con la naturaleza del señalamiento que se le hiciera, está claro que su ira fue sincera. El Tribunal, en estas circunstancias, podía concluir que el estado de ánimo de la apelada no le permitía, en ese momento, formular una voluntad de abandonar su empleo.

Cabe señalar, precisamente, que el propio Sr. Gutiérrez reconoció esta situación, indicándole a la apelada que no debía renunciar por un mero coraje y que lo pensara. La posición de la apelante, en este sentido, es que dicha parte le brindó la oportunidad a la apelada de ponderar su decisión hasta las 8:00 de la noche del día 4 de septiembre de 1991. El récord refleja, sin embargo, que la apelada no recuperó su compostura sino hasta el próximo lunes, 9 de agosto de 1991. En ese momento, la apelada compareció a la fábrica con una excusa médica, para justificar sus ausencias durante el período anterior, lo que resultaba inconsistente con una intención de renunciar a su empleo.

A base del récord ante este Tribunal habría que concluir que la voluntad de renunciar de la apelada fue, cuando menos, ambigua. Tratándose de un estatuto de naturaleza reparadora, entendemos que el Tribunal de instancia podía concluir que la parte recurrida no había justificado el despido. *Srio. del Trabajo v. I.T.T.,* 108 D.P.R. a la pág. 547; véase, además, *Beauchamp v. Holsum Bakers of P.R.,* 116 D.P.R. 522, 526 (1985).

La política de la Ley Núm. 80, después de todo, es de proteger incluso a los empleados que, contrario a la apelante en este caso, han formulado una clara intención de renunciar de sus trabajos, cuando dicha decisión ha sido el producto de coacción y/o hostigamiento por parte de sus patronos con el propósito de hacerlos abandonar sus empleos. 29 L.P.R.A. sec. 185e; *Vélez de Reilova v. R. Palmer Bros. Inc.,* 94 D.P.R. 168 (1967).

No existe duda, por otro lado, que la conducta de la apelada no constituía el tipo de

violación de las normas de la compañía que justificara su despido. Compárense, *Delgado Zayas v. Hospital Interamericano de Medicina Avanzada*, **94 J.T.S. 149**, a la pág. 500; *Santiago v. Kodak Caribbean Ltd.,* ___ D.P.R. ___ (1992), **92 J.T.S. 11**, a la pág. 9164; *Rivera Aguila v. K-Mart de P.R.,* 123 D.P.R. a la pág. 610; *Nárvaez v. Chase Manhattan Bank*, 120 D.P.R. 731 (1988); *Srio. del Trabajo v. I.T.T., supra.* Observamos, en este sentido, que la apelada fue separada de su empleo al día siguiente del incidente, sin que en ese momento se intentara confirmar su voluntad de abandonar la compañía o se le invitara a completar el formulario usual de renuncia. Fue sustituida en su posición apenas un día más tarde. Esta cronología es consistente con un ánimo de penalizar --indebidamente-- a la apelada por el incidente del día 4 de septiembre de 1991.

Concluimos que el Tribunal de instancia no erró al determinar que la parte apelante había intentado aprovecharse del estado de ánimo y circunstancias de la apelada para despedirla injustificadamente.

## IV

Cadillac Industries también plantea que el Tribunal de Instancia erró al no conferir efecto de cosa juzgada, en su modalidad de impedimento colateral por sentencia, a la resolución del Departamento del Trabajo y Recursos Humanos denegando la solicitud de la apelada bajo la Ley de Seguridad de Empleo.

Para la aplicación del impedimento de cosa juzgada, incluso en la modalidad invocada por la apelante, es necesario que concurran *"la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron"*. *Rodríguez Oyola v. Machado Díaz,* ___ D.P.R.___ (1994), **94 J.T.S. 82,** a la pág. 12007; *A & P General Contractors v. Asociación Caná*, 110 D.P.R. 753, 763 (1981); 31 L.P.R.A. sec. 3343.

En el presente caso, no surge que dicho requisito se cumpliera. No está claro que, en las circunstancias del caso de autos, Cadillac Industries fuese una parte interesada en el procedimiento ante el foro administrativo. Cf. 29 L.P.R.A. secs. 706(b), 705(e). La apelación administrativa de la apelada, en este sentido, iba más bien dirigida contra el propio Negociado de Seguridad de Empleo.

Tampoco nos parece que los dos procedimientos fuesen equivalentes ni tuviesen la misma trascendencia. Bajo la Ley de Seguridad de Empleo se dilucidó ante el Negociado si la apelada calificaba para los beneficios de desempleo, teniendo ésta el peso de establecer su derecho. 29 L.P.R.A. secs. 705 y 706. Bajo la Ley de Despido Injustificado, por el contrario, se dilucidaba ante el Tribunal el derecho de la empleada, frente a su patrono, de recibir la mesada dispuesta por Ley para un despido injustificado, correspondiendo a este último el peso de justificar cualquier destitución.

Aunque, conforme a la sección 4(b)(2) de la Ley de Seguridad de Empleo, 29 L.P.R.A. sec. 704(b)(2), se establece, como una causal para la descalificación de un empleado, el que éste hubiera abandonado un trabajo adecuado *"voluntariamente y sin justa causa"*, este requisito no necesariamente es excluyente de todo remedio bajo la Ley Núm. 80. Específicamente, en casos de *"despido constructivo"*, véase, *Vélez de Reilova v. R. Palmer Bros. Inc.*, 94 D.P.R. 168 (1967), es común que no exista controversia sobre la voluntad de un empleado de abandonar su empleo --lo que tiende a debilitar cualquier reclamo bajo la Ley de Seguridad de Empleo-- aunque sí en torno a las motivaciones de su renuncia.

Opinamos que el concepto de un despido sin justa causa bajo la Ley Núm. 80 resulta distinto y más amplio que el de abandono voluntario del empleo, sin justa causa, bajo la Ley de Seguridad de Empleo, por lo que, desde el punto de vista de derecho, pueden coexistir determinaciones contradictorias bajo ambos estatutos.

Conceder, por otro lado, efecto de cosa juzgada a la determinación del Negociado de Seguridad en el Empleo en cuanto a una posible reclamación posterior por despido injustificado significa colocar a los obreros en el dilema de arriesgar un derecho para poder obtener un beneficio. La determinación de la agencia sólo puede perjudicarles, ya que, en vista de la inexistencia de una identidad de partes, una resolución favorable al empleado no podría constituir cosa juzgada en la demanda bajo la Ley Núm. 80. Claramente, este resultado es contrario a la política pública en esta área, la cual persigue beneficiar a los trabajadores.

Cabe señalar que, conforme a la sección 14(k) de la ley de Seguridad de Empleo, 29 L.P.R.A. sec. 713(k), la información ofrecida por un reclamante en una solicitud de beneficios, y obtenida en la consiguiente investigación, goza de un carácter confidencial. El propósito de esta limitación es proteger a los empleados. Véase, *Disdier Rodríguez v. Baxter Healthcare Corporation of Puerto Rico,* SNCE-93-0048 (sentencia del 24 de mayo de 1993), a la pág. 7 (citando memorando del Secretario del Trabajo al Gobernador emitido el 18 de febrero de 1955, con relación al anteproyecto de la Ley F-170) *("la revelación de información recibida de un patrono acerca de un reclamante o de información personal ofrecida por un reclamante tendería a desalentar a los trabajadores en el ejercicio de sus plenos derechos a radicar reclamaciones");* cf., *Rivera González v. Danny's Bakery,* 121 D.P.R. 304 (1988).

Es pertinente señalar, más aún, que en la propia resolución del árbitro del Negociado de Seguridad de Empleo, se advertía que:

*"La presente resolución es a los sólos efectos de las disposiciones de la Ley de Seguridad de Empleo de Puerto Rico y necesariamente no obliga bajo otras leyes aplicables."*

El Tribunal Supremo de Puerto Rico ha aclarado que la doctrina de cosa juzgada, en el contexto de decisiones administrativas, no es aplicable en los tribunales de manera automática o absoluta. Existe el poder de modificar y rechazar determinaciones administrativas previas cuando ese curso sea el más justo y conveniente en orden al interés público. Igualmente subsiste la facultad de evaluar si las partes han podido litigar oportuna y adecuadamente la controversia envuelta en el foro administrativo. *Rodríguez Oyola v. Machado Díaz,* \_\_\_ D.P.R. \_\_\_ (1994), **94 J.T.S. 82**, a la pág. 12006; *Pagán Hernández v. U.P.R.,* 107 D.P.R. 720, 735-36 (1978).

En el presente caso, opinamos que la determinación administrativa en cuestión no servía de impedimento para que el Tribunal llegase a una adjudicación distinta a la del árbitro en torno a la inexistencia de una renuncia.

Cabe citar, por tratarse de un precepto *in pari materia,* lo dispuesto en 29 L.P.R.A. sec. 281:

*"Ninguna sentencia, laudo, adjudicación o cualquier otra disposición de una reclamación por concepto de compensación, derecho o beneficio al amparo de cualquier ley, decreto mandatorio, orden de salarios, convenio colectivo o contrato de trabajo, podrá levantarse como defensa de cosa juzgada por fraccionamiento de causa de acción, para derrotar otra reclamación, a menos que en el procedimiento anterior se hubiese adjudicado expresamente, la misma causa de acción, por los mismos hechos, entre las mismas partes."*

Esta disposición, a nuestro juicio, recoge la política pública de nuestra jurisdicción en esta área, que es la de no brindar una interpretación a un estatuto reparador que perjudique los derechos de los empleados, conferidos bajo una Ley distinta. A base de dicho imperativo, y no estando presentes los elementos para una aplicación estricta de la defensa de cosa juzgada en este caso, concluimos que el Tribunal de instancia no erró al no conceder efecto de cosa juzgada a la resolución del Negociado de Seguridad de Empleo.

Por los fundamentos expresados, se confirma la sentencia apelada.

Lo pronunció el Tribunal y lo certifica la señora Secretaria General.

María de la C. González Cruz
Secretaria General

**ESCOLIOS 95 DTA 179**

**1.** No existe evidencia en el récord del Tribunal de instancia que la apelada se despidiera de empleado alguno el 5 de septiembre de 1991. La Sra. Hilda Irizarry, empleada de Cadillac Industries y amiga de la apelada, testificó que el 4 de septiembre de 1991, ella se encontraba en la oficina del Sr. Gutiérrez cuando llegaron la apelada y el Sr. Bonet. La apelada, quien estaba alterada, le comentó *"me voy'"*, lo que ella interpretó como que la apelada se iba de su trabajo.

**2.** Es interesante señalar que, conforme la prueba desfilada ante el Tribunal de instancia, a la fecha de la carta, la posición de la parte apelada no había sido asignada a otra empleada, lo que ocurrió al día siguiente, 6 de septiembre de 1991. No existe explicación para esta inconsistencia.