# 2001 DTA 98

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VI - CAGUAS/HUMACAO/GUAYAMA

ELSA M. VELAZQUEZ VELAZQUEZ
Demandante-Apelante

v.

COOPERATIVA DE AHORRO Y CREDITO DE AGUAS BUENAS
Demandada-Apelada

Núm. KLAN-00-00981

San Juan, Puerto Rico, a 22 de enero de 2001

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Rodríguez García y Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte demandante-apelante, señora Elsa Velázquez Velázquez, en adelante, (*"Velázquez"*), solicita la revisión de la Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, Hon. Juez José M. Fernández Luis, Caso Civil Núm. EPE94-0024 (612), el 2 de agosto de 2000, archivada en autos y notificada el 7 de agosto del mismo año. La referida Resolución declara No Ha Lugar la *"Moción de Reconsideración y Solicitud de Desestimación de Hechos y Conclusiones de Derecho"*, que fuera presentada por Velázquez, el 18 de mayo de 2000. Ello, como consecuencia de la Sentencia que emitiera el foro recurrido el 24 de abril de 2000, notificada el 8 de mayo del mismo año. La citada sentencia fue emitida por el Hon. Juez José A. Gutiérrez Núñez, Juez Superior, y declara que el despido de Velázquez por la Cooperativa de Ahorro y Crédito de Aguas Buenas en adelante, (*"la Cooperativa"*) fue uno justificado y que no medió discrimen en el mismo. Velázquez alega que fue despedida injustificadamente de su empleo y que se discriminó contra ella por razón de su edad y sexo. Examinada a cabalidad los autos y las comparecencias de las partes, resolvemos confirmar la Resolución recurrida, y, en su consecuencia, confirmamos la Sentencia emitida en la causa de título por el hermano foro de Instancia desestimando la Querella presentada por Velázquez ante dicho foro, el 1 de marzo de 1994. Exponemos.

## HECHOS

La causa que consideramos, ha recorrido en trámites administrativos y judiciales casi una década. Resumimos lo acontecido en la manera más clara, corta y precisa posible.

La causa se origina con la presentación de una Querella por alegado despido injustificado y discriminatorio por razón de sexo y edad en la fecha antes mencionada, al amparo de las disposiciones de las Leyes 80 y 100, de 30 de mayo de 1976, según enmendada y del 30 de junio de 1959, según enmendada, respectivamente, 29 L.P.R. A. 185(a) y sig., y 29 L.P.R.A. 146 y sig. Seis (6) años luego de la presentación de la Querella, y después de prolongados trámites incluyendo la toma de una extensa deposición a Velázquez, el 2 de junio de 1994, Apéndice parte apelante, páginas 27 a 146, reproducida inoficiosamente por la parte apelada, páginas 36 a 156, véase la Regla 74(D) de nuestro Reglamento, 4 L.P.R.A. Ap. XXII-A, Instancia resolvió como antes expresáramos.

Velázquez laboró para la Cooperativa desde el año 1978, según la Cooperativa, y desde el año 1979, según la querellante. Comenzó como cajera y luego se le asignaron otros deberes, desempeñándose como oficial de crédito cuando fuera despedida el 12 de marzo de 1991. Velázquez fue sustituida por un joven de treinta (30) años de edad aproximadamente. Luego de ser despedida, Velázquez radicó una Querella alegando discrimen por edad y sexo ante la Unidad Antidiscrimen del Departamento del Trabajo y Recurso Humano (*"U.A.D."*), el 5 de abril de 1991. El 11 de junio de 1992, la U.A.D. notificó a las partes su determinación de No Causa Probable de discrimen. Solicitada la reconsideración de la determinación, el Secretario le notificó, el 2 de marzo de 1993, a Velázquez, su determinación de que luego de evaluados los informes que le sometiera la U.A.D., entendía que su caso no debía tramitarse a nivel judicial, sosteniendo así la previa determinación de No Causa. Con posterioridad, comenzó el procedimiento judicial que nos ocupa que desemboca en la presentación por la Cooperativa, el 20 de septiembre de 1999, de una *"Moción Solicitando Se Dicte Sentencia Sumaria"*. La Cooperativa sometió y documentó en la referida moción veintisiete (27) hechos que consideraba incontrovertidos, Apéndice, páginas 6 a 207. Velázquez presentó su Oposición A Moción Solicitando Sentencia Sumaria, luego de que se le concediera dos (2) prórrogas por Instancia, lo cual no hizo hasta luego de emitida y notificada la sentencia apelada, Apéndice, páginas 208 a 217.

13

Instancia concluyó que los hechos denominados del uno (1) al veintisiete (27) en la Moción Solicitando se Dicte Sentencia Sumaria sometida por la Cooperativa, no estaban en controversia.

Velázquez señala que Instancia erró al denegar la solicitud de determinaciones de hechos y derecho iniciales adicionales, así como la reconsideración de la Sentencia, que sostiene que no hay hechos en controversias, y que el despido fue uno justificado donde no medió discrimen; y que la Cooperativa no cumplió con al "*quántum*" de prueba para rebatir la presunción de que el despido fue discriminatorio.

## EXPOSICION Y ANALISIS

Hemos examinado las veintisiete (27) determinaciones de hechos formuladas por la Cooperativa y adoptadas por Instancia, y corroborado que están sostenidas sustancialmente por los autos y la deposición tomada a Velázquez. Se une como ANEJO A y se hace formar parte de la presente Sentencia, los aludidos hechos tal y como fueran presentados por la Cooperativa, y adoptados por Instancia.

Los hechos determinados, según literalmente señalados en el Anejo A de esta sentencia, rebaten la presunción de que el despido fue discriminatorio. Aunque el Artículo 2, 29 L.P.R.A. 148, de la Ley Núm. 80, *supra*, dispone que se presumirá cuando fuera así alegado por un(a) querellante, que se cometió discrimen por razón entre otros, de edad y sexo por parte del patrono, la presunción será de carácter controvertible. La presunción se controvierte si se entiende que la querellante fue despedida por justa causa Artículo 2, 29 L.P.R.A. sec. 1856. Véase *Odriozola v. Superior Cosmetic Distributors Corporation, Etc.*, 116 D.P.R. 485, 502 (1985).

Es correcto que Velázquez pertenece a dos (2) grupos protegidos, género y edad (48) años, a la fecha de que fuera despedida, pero ello de por sí, no le concede un manto de inmunidad que no permitiría su despido. A Velázquez, durante su estadía como empleada de la Cooperativa, le cursaron unos ocho (8) Memorandos sobre los requisitos y procedimientos para la tramitación de préstamos. Los mismos se discutían en reuniones que se realizaban, y Velázquez, durante su deposición, admitió haberlos recibidos. Aún así, violó los procedimientos internos y directrices de la Cooperativa. Ello ocasionó que el señor Laureano tuviera que llamarle la atención verbalmente y por escrito en, por lo menos, cuatro (4) ocasiones. Las amonestaciones comenzaron desde antes de la llegada de Laureano a la Cooperativa, ya que el señor Juan O. Sánchez, precursor de Laureano, tuvo que amonestar a Velázquez el 26 de febrero de 1988. En otra ocasión, nueve (9) de los trece (13) préstamos sometidos por ella no recibieron el visto bueno de Laureano por fallas en su procesamiento. Velázquez, entre sus deberes, también debía archivar la documentación de los documentos de los préstamos que tramitara. En torno a ello, hubo que cursarle un Memorando el 24 de mayo de 1990, indicándole que había doscientos sesenta y ocho (268) préstamos sin archivar, treinta y seis (36) de ellos databan del año 1989.

Visto lo anterior en su conjunto, nos resulta inevitable llegar a la conclusión que la Cooperativa tuvo justa causa para despedir a Velázquez cumpliendo con el "*quántum*" de prueba necesaria para rebatir la presunción de que el despido fuera discriminatorio. Véase *Narváez v. The Chase Manhattan Bank*, 120 D.P.R. 731, 738-739 (1988). De igual forma, nuestro Tribunal Supremo, reiteradamente, ha sostenido que constituye justa causa para el despido la incompetencia del empleado *Narváez v. The Chase Manhattan Bank, supra*. Para poder activar la presunción de discrimen que dispone la Ley Núm. 100, *supra*, debe establecerse que el despido fue injustificado. Resulta forzoso determinar que dentro de las circunstancias narradas en el presente caso, no lo fue.

## DICTAMEN

Por lo antes expuesto, se confirma la Resolución recurrida y, por tanto, se confirma la Sentencia emitida en el caso de autos por el Tribunal de Primera Instancia.

Así lo pronunció y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

# ANEJO A

## HECHOS INCONTROVERTIDOS

**A. El alegado despido injustificado**

1. La demandante, Elsa Velázquez Velázquez, trabajó para la parte codemandada desde el 1978 hasta el 12 de marzo de 1991, fecha en la cual fue despedida por el Sr. Jacinto Laureano, Presidente Ejecutivo de la "*Cooperativa*". Exhibit 1, carta de despido, Exhibit II, Transcripción de la Deposición que le fuera tomada a la demandante el 2 de junio de 1994, páginas 11, 12 y 15.

2. A la fecha de su despido, la demandante ocupaba el puesto de Oficial de Crédito y realizaba funciones de crédito y préstamos. Entre sus funciones estaba el cumplimentar las solicitudes de préstamo y sometérselas al Sr. Jacinto Laureano para que una vez éste las revisara y comprobara que estaban debidamente cumplimentadas, le diera el visto bueno y las sometiera al Comité de Crédito. Exhibit II, páginas 14 y 15, 44-45.

3. Como parte de las funciones de su puesto y las necesidades del negocio, la demandante recibió adiestramientos periódicamente, ofrecidos o pagados por la Cooperativa. Exhibit II, página 93.

4. Todo nuevo procedimiento que era implantado en la Cooperativa, relacionado con el área de trabajo de la demandante; es decir, en cuanto a los requisitos y procedimientos para la tramitación de los préstamos, le era notificado, informado y explicado por escrito a la demandante y en ocasiones también discutido en reuniones. Exhibit II, páginas 38-45; Exhibit III, Memorando de 4/13/88; Exhibit IV, Memorando de 7/12/88; Exhibit V, Memorando de 6/18/88; Exhibit VI, Memorando de 2/22/89; Exhibit VII, Memorando de 9/7/89; Exhibit VIII, Memorando de 2/16/89; Exhibit IX, Memorando de 9/15189; Exhibit X, Memorando de 12/5/89; Exhibit XI, Memorando de 2/28/91.

5. Todos y cada uno de los memorandos antes mencionados, le fueron mostrados a la demandante en su deposición; ésta admitió haberlos recibido y se hicieron formar parte de la deposición. Exhibit II, páginas 35-40, 43-45.

6. Del expediente de personal de la demandante se desprende que ésta fue amonestada en varias ocasiones. En su deposición, ésta admitió haber recibido dichas amonestaciones escritas, las cuales se hicieron formar parte de la deposición, Exhibit II, págs. 35-40, 43-45.

7. Las amonestaciones escritas que recibiera la demandante, forman parte de su expediente de personal desde mucho antes que el Sr. Jacinto Laureano comenzara a trabajar para la Cooperativa. El 26 de febrero de 1988, el Sr. Juan O. Sánchez, Gerente de la Cooperativa, le cursó un memorando a la demandante amonestándole por cumplimentar incorrecta e inadecuadamente solicitudes de préstamos, recalcándole que en el pasado se le había orientado sobre la forma y manera en que debían ser cumplimentados los préstamos. Se le señaló, además, que era importante que estuviera pendiente que las solicitudes de crédito que recibieran otros funcionarios estuvieran de acuerdo a los procedimientos establecidos. Exhibit XII, Amonestación de 2/26/88; Exhibit II, página 38.

8. El 21 de febrero de 1990, la demandante recibió otra amonestación escrita por faltas y errores en el procesamiento de préstamos. En su deposición, la demandante admitió haber recibido esta amonestación y dijo haberla contestado. En la misma, se le indicó que tanto verbal como por escrito, se le han hecho señalamientos sobre la tramitación de préstamos y a esa fecha continuaba cometiendo las mismas fallas o errores que han tratado se corrijan. En la misma, se le amonestó debido a que del total de préstamos por ella sometidos, en las semanas anteriores, por lo menos, la mitad o más de la mitad, no habían pasado la evaluación del señor Laureano y se le explica en detalle las múltiples deficiencias cometidas en el procesamiento de préstamos. Exhibit XIII, Amonestación de 2/21/90, Exhibit II, página 42.

9. El 6 de abril de 1990, nuevamente el señor Laureano tuvo que amonestar por escrito a la demandante por faltas en el procesamiento de préstamos al ser sometidos para su aprobación sin que fueran debidamente cumplimentados de acuerdo con las políticas y directrices de la Cooperativa. Además, se le amonestó por ausentarse del lugar de trabajo sin autorización y sin notificar a su supervisor, trastocando así el funcionamiento de la Cooperativa. Se le indicó que la excusa que ofreció posteriormente, que una hermana había tenido un accidente, hubiese justificado que le autorizaran la ausencia, pero es de suma importancia que notificara sus ausencias para hacer los arreglos de personal pertinentes. En su deposición, la demandante recordó haber recibido dicho memo, pero dijo que no creía que lo hubiese contestado. Exhibit XIV, Amonestación de 4/6/90, Exhibit II, página 43.

10. El 18 de abril de 1990, la demandante volvió a ser objeto de una amonestación escrita, dirigida a ésta y a su supervisor, Sr. Jesús Guzmán. En dicho memorando, se les indica que de trece (13) préstamos a ser sometidos al Comité de Crédito, nueve (9) de ellos no recibieron el visto bueno del señor Laureano por no haber sido procesados correctamente. Se hace también referencia a las múltiples amonestaciones que se le habían hecho a la demandante y se responsabiliza al supervisor de ésta, por las fallas de la demandante. La demandante reconoció en su deposición haberlas recibido. Exhibit XV, Memorando de 4/18/90, Exhibit II, página 43.

11. El 24 de mayo de 1990, la demandante volvió a ser amonestada por escrito por no cumplir con su deber de archivar los préstamos. En esa comunicación, el supervisor inmediato de la demandante, Sr. Jesús Guzmán, le indicó que debido a su falta de iniciativa para archivar los préstamos ya concedidos, él mismo se dio a dicha tarea. Se le recalcó a la demandante que desde el 16 de mayo de 1990, el Presidente Ejecutivo de la Cooperativa, señor Laureano, había manifestado inquietud por la apariencia de la Oficina de Crédito, entre ello, los préstamos ya concedidos y no archivados. El señor Guzmán indica en su memorando que habían doscientos sesenta y ocho (268) préstamos sin archivar, de los cuales treinta y seis (36) eran de 1989, treinta y siete (37) préstamos ya cancelados y ciento noventa y cinco (195) eran de 1990. Esta función de archivar los préstamos le correspondía a la demandante y era su responsabilidad, conforme se le informará en Memorando de 18 de junio del 988. Ambos memorandos fueron recibidos por la demandante, ya que así lo admitió en su deposición. Exhibit XVI, Amonestación de 5/24/90; Exhibit H, páginas 35 y 44, Exhibit XVII, Memorando de 18 de junio de 1988.

12. El 8 de marzo de 1991, el señor Laureano le cursó otra amonestación a la demandante por continuar incurriendo en fallas y errores en el procesamiento de los préstamos, no empece habérsele llamado la atención en el pasado y se le hace un desglose de las diferentes fechas en que se le cursaron amonestaciones escritas. Exhibit XVIII, Amonestación de 3/8/91; Exhibit II, página 45.

13. El 12 de marzo de 1991, la demandante fue despedida por el señor Laureano, Presidente Ejecutivo, debido al desempeño ineficiente de la demandante, no empece habérsele llamado la atención en múltiples ocasiones para que corrigiera sus faltas y/o deficiencias y habérsele adiestrado y ofrecido los mecanismos necesarios para que se superara. (Véase Exhibit I, Carta de 12 de marzo de 1991.)

14. La demandante nació el 17 de abril de 1942, al momento de su despido contaba con cuarenta y ocho (48) años de edad. (Véase Exhibit II, página 5.)

15. El Sr. Jacinto Laureano fue la persona que despidió a la demandante y es contemporáneo en edad con ésta. El señor Laureano nació el 5 de agosto de 1947 y contaba con cuarenta y cuatro (44) años de edad a la fecha del despido de la demandante. (Véase Exhibit XIX, página 1).

16. Al momento del despido de la querellante, la Cooperativa contaba con once (11) empleados, incluyendo al Director Ejecutivo, señor Laureano. De los once (11) empleados, seis (6) eran mujeres. Exhibit II, páginas 82-83.

**B.** El alegado discrimen por razón de sexo y edad

17. La alegación de discrimen por razón de sexo se basa en un empleado varón que fue ascendido a gerencial,

16

Exhibit II, página 94.

18. En cuanto a cuáles eran los actos constitutivos de discrimen por edad, la demandante declaró en su deposición:

"P. Bueno, por edad yo diría que siempre en reuniones y demás, pues, se era más frecuente con las personas jóvenes. Yo siempre me enteraba casi siempre a lo último.

P. ¿Qué edad tiene el Sr. Laureano, si usted conoce?

R. Desconozco.

P. Nos estaba hablando de las reuniones que eran con personas jóvenes ¿Quiénes hacían esas reuniones?

R. Bueno, o sea, que si se argumentaba algo abajo, pues, yo siempre me enteraba a lo último. No se me considera en...

P. ¿Pero a qué reuniones usted se refiere?

R, Bueno, abajo, pues, siempre se hablaba una que otra cosa, o se disponía de...

P. ¿Pero qué tipo de reuniones, reuniones de trabajo citadas por el...

R. No, reuniones de trabajo a mí sí se me citaba. Pero cualquier cosita que había de... cómo le diría yo, de un "get-togethe"....

P. ¿Entre los empleados, que no eran citados por el Sr. Laureano?

R. Podría ser. O sea, que yo siempre de ciertas cosas me enteraba a lo último.

P. Pero de lo que usted está hablando, es reuniones que hacían los mismos empleados. ¿Eso es correcto?

R. También estaba el Sr. Laureano.

P. ¿Porque lo invitaban a él?

R. Bueno, también podría ser.

P. ¿Pero eran reuniones citadas por el señor Laureano?

R. No le podría decir si era por él o no. Yo sé que me enteraba a lo último.

P. ¿Qué tipo de reuniones eran? Descríbanos, por favor.

R. No, simplemente me informaban, iban arriba y me decían, "Mira, se llegó a acuerdo de esto, vamos a hacer esto...".

P. ¿Pero sobre qué era en específico?

R. Quizás alguna actividad que había para el tiempo de Navidad o para el tiempo de... Unas fechas claves que siempre hay en los trabajos.

Exhibit II, páginas 87-89.

19. Dicho de otra forma, las alegaciones de discrimen por edad de la demandante se fundamentan en que no la invitaban, o la invitaban a última hora, a reuniones o eventos sociales no relacionados con el trabajo y en los que participaban otros empleados de la Cooperativa. Claramente testificó la demandante que a las reuniones que tenían que ver con cuestiones de la Cooperativa, siempre se le citaba. Exhibit II, páginas 87-89.

20. Las alegaciones de la demandante, a los efectos de que se le fabricó un expediente negativo, se basa en que alegadamente los memos que recibía eran muy frecuentes y no le daban un lapso de tiempo para bregar con la situación. Lo anterior está en contraposición con la prueba documental, los memorandos antes mencionados, los cuales forman parte de esta moción. En su deposición se le preguntó a la demandante si la información que se consignaba en esos memos era falsa y ésta no lo negó, simplemente intentó justificar su incumplimiento señalando que algunos no tenían razón de ser porque era difícil "amoldar" a clientes de muchos años de la Cooperativa para suministrar la "papelería", que ahora se requería, y que muchas veces no la suministraban. Exhibit II, páginas 91 y 112 y Exhibits XII a XVIII.

21. Sobre las alegadas expresiones verbales de carácter discriminatorio, la demandante nunca escuchó ninguna. No obstante, declaró en su deposición que terceras personas le dijeron que su supervisor comentaba que ella no quería hacer las cosas como eran, que estaba muy engreída porque llevaba mucho tiempo y quería hacer lo que ella quisiera. Declaró, también, que nunca escuchó expresión discriminatoria alguna del señor Laureano. Exhibit II, páginas 91-92, 98. El único comentario que la demandante escuchó, fue cuando un presidente de la Junta de Directores tuvo un diálogo con ella y le dijo que si tenía que destituirla lo haría. La demandante alega que ese diálogo se dio por tener una "espiga de incienso" prendida en su oficina y alega que el señor Guzmán dijo, lo cual no le consta de propio y personal conocimiento, que la demandante hacía brujería. Exhibit II, página 92.

22. El 5 de abril de 1991, la demandante radicó una querella ante la Unidad Antidiscrimen (UAD) por alegado discrimen por razón de sexo y edad. Exhibit XX. El 11 de junio de 1992, dicha Unidad notificó a la demandante su determinación de NO CAUSA PROBABLE de discrimen. Exhibit XXI. Inconforme con dicha determinación, la demandante solicitó reconsideración [1] al Secretario del Departamento del Trabajo. El 2 de marzo de 1993, el Secretario del Trabajo le indicó a la demandante que luego de evaluar los informes rendidos por la UAD, entendían que el caso no debía tramitarse a nivel judicial, y le indicaron que de no estar conforme con dicha determinación, podía radicar su caso con un abogado particular. Exhibit XXII.

23. Desde el 1991, la demandante trabajaba también a tiempo parcial para el Municipio de Aguas Buenas mientras era empleada también de la Cooperativa. Al año de su despido, es decir para el año 1992, comenzó a trabajar a tiempo completo con dicho Municipio. Exhibit II, páginas 7, 53 y 54.

24. La demandante no requirió de tratamientos médicos a raíz de su despido, el 12 de junio de 1991, Exhibit II, página 98.

25. En abril de 1990, la querellante se reportó al Fondo del Seguro del Estado por una condición emocional, la cual no le fue relacionada y se encuentra ante la Comisión Industrial. Exhibit II, páginas 46, 48-53.

26. El único padecimiento que aqueja a la querellante es la taquicardia, dolor de cabeza como consecuencia de la taquicardia -para lo que toma un medicamento para la hipertensión (Inderal) y a veces insomnio y toma Xanax-, la cual es una condición preexistente que le era tratada por la doctora Colón Ramírez, internista, antes de 1990, y en la actualidad es tratada por el doctor Pastrana, generalista. Declaró también que la trató un psicólogo mientras estuvo reportada al Fondo del Seguro del Estado y la evaluó un psiquiatra de la Comisión Industrial. Exhibit II, páginas 52, 99-101.

27. Luego de su despido de la Cooperativa y aun cuando trabajaba a tiempo parcial para el Municipio de Aguas Buenas, solicitó y recibió los beneficios del Programa de Desempleo. Exhibit II, páginas 101-102.

---

**1.** De la cual advino en conocimiento la parte demandada luego de radicada la querella.