# United States Court of Appeals
## For the First Circuit

No. 17-1491

MARÍA I. VILLENEUVE,

Plaintiff, Appellant,

v.

AVON PRODUCTS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Juan M. Frontera-Suau, with whom Kenneth Colón and Frontera Suau Law Offices, PSC were on brief, for appellant.
Elizabeth Pérez-Lleras, with whom Lourdes C. Hernández-Venegas and Schuster Aguiló LLC were on brief, for appellee.

March 19, 2019

**THOMPSON**, **Circuit Judge**.   In this diversity case —
governed by Puerto Rico law, as the parties agree (Puerto Rico is
a "state" for diversity-jurisdiction purposes thanks to 28 U.S.C.
§ 1332(e)) — María Villeneuve contests the district judge's orders
jettisoning her discrimination claims against her former employer,
Avon Products, Inc. (just "Avon" from now on).   Detecting no
reversible error, we affirm.

## HOW THE CASE GOT HERE

Because the judge kicked out Villeneuve's claims on
Avon's motions to dismiss and for summary judgment (the judge
should have treated the first motion as a motion for judgment on
the pleadings, for reasons we will get to), we sketch the pertinent
events in the light most flattering to her cause.   See, e.g., Small
Justice LLC v. Xcentric Ventures LLC, 873 F.3d 313, 323 (1st Cir.
2017); Estate of Bennett v. Wainwright, 548 F.3d 155, 159 (1st
Cir. 2008).

## Villeneuve's Stint at Avon

In January 1998, when she was 30 years old, Villeneuve
started working as a "Caribbean Zone Manager" for Avon, a
multinational cosmetics, fashion, and accessories company.
Sometime in 2005 (the record does not say exactly when), she became
a "District Zone Manager."   And several years later, in May or
June 2012, she became a "Caribbean Call Center Correspondent"

- 2 -

("Caribbean CCC," for short), though her salary was the same as her District Zone Manager salary. Avon terminated her employment effective July 11, 2014. She was 47 years old on the day Avon let her go.

## Villeneuve's Suit Against Avon

Unhappy with this turn of events, Villeneuve filed this lawsuit against Avon in November 2014. Stripped to its essence, her complaint alleged that Avon had discriminated against her by firing her because of her age and because of her affectionate, "longstanding" relationship with an attorney "of a different gender" who had sued Avon "several" times before on behalf of other former Avon employees — a relationship that Avon knew about. Consistent with the judge and the parties, we refer to the claim involving her "longstanding affective partner" as the "sexual-orientation-discrimination claim." According to her complaint, the discrimination in question violated two Puerto Rico statutes: P.R. Laws Ann. tit. 29, § 185a — a law commonly called "Law 80"; and P.R. Laws Ann. tit. 29, § 146 — a law colloquially called "Law 100."[1] As relevant here, Law 80 requires an employer to

---

[1] Reader alert: Puerto Rico amended these laws by passing the "Labor Transformation and Flexibility Act," effective on January 26, 2017. The changes govern only prospectively, however — "[e]mployees hired before the effective date of this act," wrote the legislature, "shall continue to enjoy the same rights and benefits they enjoyed before, as expressly provided in the sections thereof." P.R. Laws Ann. tit. 29, § 121a. So the amendments are

"[i]ndemni[fy]" the employee if the employer terminates her "without just cause."  See P.R. Laws Ann. tit. 29, § 185a.  And Law 100 outlaws employment practices that discriminate against persons on the basis of "age" or "sexual orientation."  See P.R. Laws Ann. tit. 29, § 146.

### Avon's Partial Motion to Dismiss and the Judge's Ruling

After answering Villeneuve's complaint, Avon filed a motion to dismiss the sexual-orientation-discrimination claim against it — citing Fed. R. Civ. P. 12(b)(6).[2]  In its memo supporting its dismissal motion, Avon stressed how Law 100 forbids an employer from firing an employee because of the employee's sexual orientation.  And Avon quoted a 2013 amendment to Law 100, which provides that "sexual orientation"

> [m]eans the ability of any person of having an emotional, affectional, or sexual attachment to persons of the other gender, the same gender, or more than one gender. . . . [T]o accomplish all the purposes provided herein,

not relevant here.  Which is why we simply discuss the law as it existed when the events at issue occurred — and as is the custom, "we use the present tense" when doing so.  See Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 283 n.1 (2010) (taking that tack in a similar situation).

[2] Because Avon's answer generally denied all claims, the judge should have construed Avon's motion to dismiss as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).  See, e.g., Patrick v. Rivera-López, 708 F.3d 15, 18 (1st Cir. 2013).  But this oversight does not matter for present purposes, since "[a] motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss."  See Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).

- 4 -

> this definition shall be interpreted as broadly as possible to extend the benefits thereof to any citizen who is a victim of discrimination, whether it is a one-time event or a pattern.

See P.R. Laws Ann. tit. 29, § 151(7). With that foundation in place, Avon revealed its big argument — that Villeneuve's allegations of being "in a relationship *with a lawyer who has sued Avon in the past*" did not put her in a "protected class." In other words, because, according to Avon, Villeneuve "bases her" sexual-orientation-discrimination claim "on the profession and conduct of the person she is dating, *i.e.*, an attorney who has sued Avon," her allegations have "nothing to do with [her] sexual orientation" — which excludes her from the class protected by Law 100. And Avon saw no basis for extending Law 100's protections to cover such a situation.

Villeneuve countered that because she alleged "Avon took into account the specific and affectionate relationship she had with said lawyer when deciding . . . her employment status at the company" — *i.e.*, because she alleged this "affectionate and romantic relationship . . . was a motivating factor" in her firing — she had "protected status under Puerto Rico Law." Which is why, her argument continued, the judge had to deny Avon's partial motion to dismiss.

The judge, for his part, sided with Avon. Noting that Law 100 bans an employer from terminating an employee "because of"

- 5 -

the employee's "sexual orientation," the judge ruled that an employee's "being terminated because the employer disapproves of the professional legal conduct of the romantic partner . . . is not . . . a discriminating event within the law."  So the judge granted Avon's motion and dismissed Villeneuve's sexual-orientation-discrimination claim.

### Avon's Motion for Summary Judgment and the Judge's Ruling

Years of discovery ensued, culminating in Avon's moving for summary judgment on Villeneuve's remaining claims — age discrimination under Law 100 and unjust discharge under Law 80.  Its summary-judgment submissions told the following story.

At the time of her firing, Villeneuve worked as a Caribbean CCC at Avon's Call Center.  Overseen by Carmen Miranda, the Head of the Avon Customer Care Department, the Call Center employed a number of Call Center Correspondents ("CCCs," from now on).  But Villeneuve was the only *Caribbean* CCC there.

"[I]n charge of dealing with the Caribbean," Villeneuve's duties included training Avon's Puerto Rico and Caribbean "representatives" to "place orders online"; "perform[ing] welcome calls for new representatives"; "mak[ing] past-due collection calls to representatives in the Caribbean"; "handling calls in English" and "provid[ing] English materials" on "request."  She was also required to be bilingual; to send emails

to representatives in the Caribbean reminding them of events happening in the Caribbean; and to travel within and outside Puerto Rico. CCCs, on the other hand, did not make calls on past-due orders; did not travel within or outside Puerto Rico; and only needed a basic knowledge of English.

Concerned with Avon Puerto Rico's lack of growth, Adnauer Amorin, Avon's General Manager for Puerto Rico and Canada, ordered a reorganization — which required a reduction in personnel. Department heads in Puerto Rico had to achieve a certain level of savings, for example, with Miranda asked to shave $300,000 from the Customer Care Department's budget. And after reviewing the situation, Miranda concluded that the Caribbean CCC's workload did not justify what Avon was paying Villeneuve. So Avon terminated Villeneuve, abolishing the Caribbean CCC job and transferring her duties to other positions.

But Villeneuve was not the only person let go because of the reorganization, Avon was quick to point out. Several other employees in five departments — Customer Care, Sales, IT, Supply Chain, and Finance — lost their jobs too.[3] Five firees were younger than Villeneuve, Avon added. And three were older.

---

[3] A point of clarification: Avon said in its summary-judgment memo that it had fired nine employees as part of the reorganization — something Avon repeats in its brief to us. Avon's Human Resource Manager, Claudia Cifuentes, did say that the reorganization resulted in Avon's firing "a total of 9 employees." But as the

Having said its piece on the facts, Avon made a multifaceted argument for why it should win at the summary-judgment stage (we highlight its main points). For starters, Avon contended that because Villeneuve had lost her job as part of "a *bona fide* reorganization, . . . implemented to obtain cost savings, optimize the [c]ompany's resources," and "increase its profits and competitiveness," she could not establish a *prima facie* case of age discrimination under Law 100. Next, Avon argued that even assuming Villeneuve had a *prima facie* case, she could not show that the articulated rationale was pretextual. And because she was fired during a "*bona fide* reorganization," her "termination was with just cause" — which means (at least in Avon's view) that her Law 80 claim was a no-go.

Villeneuve's memo opposing summary judgment insisted that Avon got all the important things dead wrong. She claimed, for instance, that her duties as Caribbean CCC were "essentially the same" as the CCCs. She also claimed that they had the same direct supervisor; attended meetings called by that supervisor; got "the same training" on "Avon products and campaigns"; and "shared the same work schedule and the same evaluation performance

district judge indicated, the supporting documents show that Avon fired a total of eight employees — five over the age of forty (including Villeneuve) and three under that age.

- 8 -

forms." And she claimed that a "substantially younger" Avon employee assumed her duties after her termination.

Moving from the facts to the law, Villeneuve complained that Avon had not carried its burden under Law 80 of showing just cause for her termination, principally because it based its "*bona fide* reorganization" theory on inadmissible hearsay evidence.[4] And even if the evidence were admissible, the evidence in no way indicates Avon faced a decrease in sales or revenues so substantial as to "put[] at risk the continuity of the business," thus necessitating a reorganization — or so she protested. She also argued that Avon failed to give her seniority preference over her coworkers in "the same occupational classification." As for the Law 100 matter, Villeneuve contended that Avon's proffered

---

[4] Convinced the evidence was inadmissible, Villeneuve moved to strike numerous paragraphs in Avon's statement of uncontested facts (a statement submitted by Avon in support of its summary-judgment motion) — we note for future reference, however, that under Fed. R. Civ. P. 56(c)(2), a party may simply object in her memo to evidence she thinks is inadmissible; "[t]here is no need to make a separate motion to strike." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment. Villeneuve also separately moved to "strike and/or deny" Avon's summary-judgment motion for providing "incomplete" English translations of several Puerto Rico Supreme Court cases cited in Avon's summary-judgment memo. The judge entered an electronic order saying that because these motions to strike "are directly intertwined with [Avon's] pending" summary-judgment motion, he would "address[]" them "in ruling on the motion for summary judgment forthwith."

explanation was merely a pretext for unlawful age discrimination, especially since a younger employee assumed her former duties.

With the issues teed up for decision, the district judge ruled this way. The judge first decided that Avon's evidence established Villeneuve was a legitimate casualty of a *bona fide* reorganization — legitimate, because Avon ordered the reorganization to combat the Puerto Rico operation's "lack of growth and to generate savings," not to discriminate against her on age grounds. On the age-discrimination point, the judge found that a "*bona fide* reorganization" led to the firing of eight employees — three of whom "were less than 40 years old" at the time (including one who was 29), while Villeneuve (don't forget) was 47. So "Avon's *bona fide* reorganization was not motivated by age discrimination, but [by] economic reasons," and was thus done with just cause. Villeneuve also showed "no evidence" of pretext, the judge added. Ultimately, because she "failed to show a *prima facie* case of age discrimination under Law 100," and because "Avon's reorganization was performed 'with good cause' under Law 80," the judge granted Avon's summary-judgment motion.[5]

---

[5] The judge, though, did not expressly rule on Villeneuve's motions to strike paragraphs from Avon's statement of uncontested facts. But his summary-judgment decision did rely on paragraphs that Villeneuve wanted stricken. While "it is plainly the better practice for a trial court to rule explicitly on every substantial motion, it has long been accepted that a trial court may implicitly deny a motion by entering judgment inconsistent with

**OUR TAKE**

Dissatisfied with the judge's dismissal and summary-judgment rulings, Villeneuve appeals. She and Avon make an array of arguments in support of their positions. And we address them below, adding more details as we go along. But first, a quick primer on the workings of the statutory system in vogue when she filed her complaint (see our first footnote for an explanation of all this).

**Law 80 and Law 100[6]**

*Law 80*

Law 80 creates a right of action for at-will employees fired "without just cause." See P.R. Laws Ann. tit. 29, § 185a. Stressing that just cause cannot be founded on "the mere whim of the employer," id. § 185b, Law 80 says that a dismissal is for just cause when, for example, the employee "indulges in a pattern of improper or disorderly conduct," id. § 185b(a); there are "[t]echnological or reorganization changes as well as changes of style, design, or the nature of the product made or handled by the [company]," id. § 185b(e); or there are "[r]eductions in employment

---

it." In re Grand Jury Subpoena, 274 F.3d 563, 577 (1st Cir. 2001). And that is essentially what the judge did with Villeneuve's motion to strike various paragraphs in Avon's statement of uncontested facts.

[6] Each case of ours mentioned in this part of the opinion interpreted and applied Puerto Rico law.

- 11 -

made necessary by a reduction in the anticipated or prevailing volume of production, sales, or profits at the time of the discharge," id. § 185b(f).[7] For ease of reference, we will refer to the last two provisions — the ones relevant here — as, respectively, "provision (e)" and "provision (f)." Anyhow, if the employer fires "employees for one of those . . . reasons, . . . the employer must give preference to those employees with greater seniority over those with less seniority within the same occupational classification." Carrasquillo-Ortiz v. Am. Airlines, Inc., 812 F.3d 195, 196 (1st Cir. 2016).

Helpfully, Puerto Rico's Supreme Court has explained that provision (e) "allows the dismissal of employees without having to pay the compensation . . . if that decision is made as part of a [c]ompany's reorganization that is so required." Zapata-Berríos v. J.F. Montalvo Cash & Carry, Inc., 189 P.R. Dec. 414, 426 (2013) (certified partial translation provided on appeal by Villeneuve, our docket entry number 47-2). Or put slightly differently, employers

> can modify the way [they] do[] business through some type of change directed to optimizing [their] resources and increasing the profits, be it [by] eliminating positions, creating others new or merging some already existing as a vehicle to face financial or competition problems, as long as it is a *bona fide* restructuring.

---

[7] The statute provides other examples too.

Id.

As for provision (f), Villeneuve plays up the following from Zapata-Berríos. "[T]he economic situation caused by the reduction in production, sales or profits in a [c]ompany," Puerto Rico's top court said, "can lead . . . employer[s] to take measures to limit the costs, such as reducing the workforce." Id. But that "does not mean that every reduction in sales or profits will translate in[to] just cause for a dismissal" — rather, provision (f) "will only apply to those situations in which the referenced reduction is substantial to the point that it threatens the continuity of the company." Id.; see also id. at 426-27 (emphasizing that "[s]uch reduction in sales, profits, or real or foreseen production must be significant to the degree that it threatens the stability and economic solvency of the business").[8]

---

[8] Now is a good a time to discuss Villeneuve's gripe about Avon's use of partially translated cases in its summary-judgment memo. She first argues that Avon's failure to give the judge full translations of these cases should cause us to reverse his summary-judgment ruling. The problem for her, however, is that the judge did not use these cases in his summary-judgment analysis. See generally Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007) (finding no reversible error where the "untranslated" documents had no "bearing on the district court's ratio decidendi"). Battling on, she also argues that the parts of Zapata-Berríos she had translated for this appeal (quoted above) cut the legs out from under the judge's summary-judgment decision (for what it's worth, Villeneuve relied on these snippets of Zapata-Berríos in her papers opposing summary judgment, but without giving the judge any English translations). The problem with this line of argument is that the translated pieces on which

Law 80 operates through the following burden-shifting regime. The plaintiff has the initial burden of showing that the employer actually or constructively fired her, and of alleging that her firing was not justified. See, e.g., Echevarría v. AstraZeneca Pharm. LP, 856 F.3d 119, 140 (1st Cir. 2017); Álvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998). If she does that, the burden shifts to the employer to show just cause for the firing. See, e.g., Echevarría, 856 F.3d at 140; González v. El Día, Inc., 304 F.3d 63, 75 (1st Cir. 2002). And if the employer does that, the burden shifts back to the plaintiff to rebut the employer's showing. See Echevarría, 856 F.3d at 140.

Construing Puerto Rico law, we recently described what an employer must show "to establish just cause under Law 80." See Pérez v. Horizon Lines, Inc., 804 F.3d 1, 9 (1st Cir. 2015). "[A]n employer," we said, "need only demonstrate that it had a *reasonable basis to believe*" that the case's circumstances fit within an example of just cause listed in the statute. See id. (emphasis added).[9] To our minds, Law 80's language forbidding "an employer

_____

she pins her hopes are of no help to her, for reasons we discuss later.

[9] Pérez dealt with the improper-or-disorderly-conduct example. Id. at 9-10. But nothing in Pérez limits its application to that example.

[from] act[ing] on a 'whim'" suggests "that a 'just' discharge is one where an employer provides a considered, non-arbitrary reason for an employee's termination that bears some relationship to the [company's] operation." Id. at 9. We then noted that Puerto Rico's high court

> has . . . resisted reading Law 80 to impose statutory penalties "just because an employer makes an error of judgment," since such a rigid reading (which would seem to require courts to regularly review the merits of companies' internal investigations) would go "beyond the letter and spirit of the law."

Id. at 9-10 (quoting Narvaez v. Chase Manhattan Bank, 120 P.R. Dec. 731, 20 P.R. Offic. Trans. 766, 773 (1988)). We emphasized as well that we judges do not serve "as [a] super personnel department[], assessing the merits — or even the rationality — of employers' nondiscriminatory business decisions." Id. at 10 (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)). And wrapping up, we wrote that while "Law 80 undoubtedly circumscribes the reason for which an employer may terminate an employee[,] . . . we do not read the statute to require a factfinder to regularly review the objective accuracy of an employer's conclusions." Id. (footnote omitted).

*Law 100*

Among other things, Law 100 prohibits discrimination in employment because of age or sexual orientation. See P.R. Laws Ann. tit. 29, § 146. And "sexual orientation" again "[m]eans the

- 15 -

ability of any person of having an emotional, affectional, or sexual attachment to persons of the other gender, the same gender, or more than one gender" — a definition courts should "interpret[] as broadly as possible." See P.R. Laws Ann. tit. 29, § 151(7). Under Law 100, a plaintiff must first establish a *prima facie* case by showing the employer actually or constructively fired her, and by alleging the employer did so discriminatorily. See Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001). If she satisfies these modest requirements, a rebuttable presumption of discrimination arises, shifting the burden to the employer to prove it had "just cause" for the firing, see id., with just cause's meaning drawn from Law 80, see Pérez, 804 F.3d at 8 n.4 (noting that Law 100's burden-shifting regime largely mimics Law 80's). If the employer establishes just cause, the presumption vanishes and the plaintiff must prove that the employer's stated reason was merely a pretext for unlawful discrimination. See García-García v. Costco Wholesale Corp., 878 F.3d 411, 423 (1st Cir. 2017); Pérez, 804 F.3d at 8 n.4; see also Álvarez-Fonseca, 152 F.3d at 28 (noting that in such circumstances, "[t]he plaintiff must prove that, even if the dismissal was justified," the employer still infracted "Law 100 because the dismissal was motivated by discriminatory animus instead of or in addition to the legitimate

- 16 -

reasons for dismissal").[10]  But if the employer does not establish just cause, it must prove that the firing was not motivated by illegal discrimination.  See, e.g., Baralt, 251 F.3d at 16; Álvarez-Fonseca, 152 F.3d at 28.

**The Judge's Dismissal Ruling**

*Standard of Review*

Because Avon filed its Rule 12(b)(6) motion after filing its answer to Villeneuve's suit, the judge should have treated the motion as a Rule 12(c) motion.  See Pérez-Acevedo, 520 F.3d at 29. No matter, we say.  And that is because under either rule, we review the judge's order dismissing Villeneuve's sexual-orientation-discrimination claim with fresh eyes (what the law calls "*de novo*" review), keeping in mind the following points.

Dismissal is proper if — after accepting all well-pleaded facts as true and viewing them in the light most favorable to Villeneuve — the complaint fails to allege a plausible right to relief.  See, e.g., Doe v. Brown Univ., 896 F.3d 127, 130 (1st Cir. 2018); Díaz–Nieves v. United States, 858 F.3d 678, 688-89 (1st Cir. 2017); Hochendoner v. Genzyme Corp., 823 F.3d 724, 730

---

[10] "'[P]retext'" generally "means deceit used to cover one's tracks."  Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)); see also Black's Law Dictionary 1380 (10th ed. 2014) (defining pretext as "[a] false or weak reason or motive advanced to hide the actual or strong reason or motive").

(1st Cir. 2016); Pérez-Acevedo, 520 F.3d at 29. Plausibility demands that the factual allegations "be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). And we gauge plausibility by drawing not only on "judicial experience," but also on "common sense." See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Also, "[a]lthough a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial — in a discrimination case, the prima facie standard — she need not plead facts sufficient to establish a prima facie case." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013). And ultimately, we can affirm the order on any basis evident from the record. See, e.g., Doe, 896 F.3d at 130.

Now for our analysis of the judge's handling of Villeneuve's sexual-orientation-discrimination claim.

*Sexual-Orientation-Discrimination Claim*

Villeneuve plausibly pled that Avon fired her. But she did not plausibly plead that her firing constituted sexual-orientation discrimination in violation of Law 100, even after accepting her complaint's well-pleaded facts as true and

construing them in the light most pleasing to her. Our reason for thinking so is straightforward.

Remember: Law 100 bars employers from firing employees because of the employees' "sexual orientation" — *i.e.*, it forbids companies from discriminating against workers because of the workers' "ability" to have "an emotional, affectional, or sexual attachment to persons of the other gender, the same gender, or more than one gender." See P.R. Laws Ann. tit. 29, § 151(7). Remember too: Villeneuve alleged Avon canned her "because of her longstanding affective relationship with a lawyer" — "a person of a different gender than her" — who "had filed several federal cases of employment discrimination and/or unjust dis[charge] against [Avon]." And therein lies the rub: Villeneuve's key allegation is not that Avon fired her "because of" her "ability" to have "an emotional, affectional, or sexual attachment to [a] person[] of the other gender." It is that Avon fired her because of her companion's litigious involvement with the company. So she has not plausibly pled sexual-orientation discrimination in her discharge.

We of course take seriously our duty to interpret the definition of sexual orientation "broadly" to achieve the statute's "purposes." See P.R. Laws Ann. tit. 29, § 151(7). But an employee's being in an affectionate relationship with a lawyer

- 19 -

who has sued the employer simply is not a protected class under the statute. And to hold otherwise (as Villeneuve says we should) would require us to create indirectly what the Puerto Rico legislature did not provide directly — something we have no power to do. See, e.g., P.R. Laws Ann. tit. 31, § 14 (proclaiming that "[w]hen a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof"); Warner Lambert Co. v. Tribunal Superior, 1 P.R. Offic. Trans. 527, 559 (1973) (stating that because "[n]o ambiguity in the letter of the law []or doubts about the legislative intention exist," a court's "enlarg[ing]" a statute's definition "by judicial construction . . . would be tantamount to subverting the true sense and purpose of the statute").

And because Villeneuve's sexual-orientation-discrimination claim does not cross the plausibility line, we must let the judge's dismissal of that claim stand.

**The Judge's Summary-Judgment Ruling**

*Standard of Review*

We examine the judge's summary-judgment decision afresh. See Rivera-Corraliza v. Puig-Morales, 794 F.3d 208, 214 (1st Cir. 2015). Viewing the facts and inferences in the light most friendly to Villeneuve, see Delgado-Caraballo v. Hosp. Pavía Hato Rey, Inc., 889 F.3d 30, 34-35 (1st Cir. 2018), we ask whether Avon has shown

"there is no genuine dispute as to any material fact and . . . is entitled to judgment as a matter of law," see Fed. R. Civ. P. 56(a). And as always, we can affirm the judge's decision on any ground found in the record, including a ground the judge did not rely on. See Collazo-Rosado v. Univ. of P.R., 765 F.3d 86, 92 (1st Cir. 2014).

### Unjust-Discharge Claim

Because Villeneuve met her opening burden under Law 80 — she showed that Avon fired her, and she alleged that her firing was not justified — the burden is now on Avon to show that it had an adequate justification for letting her go. See, e.g., Echevarría, 856 F.3d at 140. And it is to that subject we turn.

Discussing provision (e) of Law 80, the Puerto Rico Supreme Court has made crystal clear that an employer is off the liability hook if it made a discharge decision "as part of a [c]ompany[] reorganization that is so required." See Zapata-Berríos, 189 P.R. Dec. at 426. Thus, to again quote Puerto Rico's high court, an employer

> can modify the way it does business through some type of change directed to optimizing its resources and increasing the profits, be it [by] eliminating positions, creating others new or merging some already existing as a vehicle to face financial or competition problems, as long as it is a *bona fide* restructuring.

Id.

- 21 -

And given the summary-judgment evidence, a reorganization under provision (e) is precisely the situation here. Worried about Avon Puerto Rico's rate of growth, Avon initiated some cost-saving measures — among them, having Department-Head Miranda slash $300,000 from the Customer Care Department's budget. As part of her cost-savings analysis, Miranda concluded both that the Caribbean CCC position did not have enough work to justify the expense of paying Villeneuve and that persons in other positions could do what Villeneuve was doing. So Avon eliminated the Caribbean CCC position, with Miranda herself making the decision. Which meant that Villeneuve — who was the only Caribbean CCC — lost her job because of the reorganization, as did several others, including a 29-year-old CCC.

Villeneuve tries to beat back this *bona-fide*-restructuring conclusion with several arguments. None is convincing, however.

Relying on Zapata-Berríos, Villeneuve first says that no *bona fide* reorganization occurred because "[o]nly those situations in which the decrease in sales or revenues . . . put[] at risk the continuity of the business qualify as just cause under [provision] (f) of . . . Law 80." Admittedly, Zapata-Berríos did note that provision (f) applies when "the referenced reduction is substantial to the point that it threatens the continuity of the

- 22 -

company." 89 P.R. Dec. at 427. But Zapata-Berríos did not use the threatens-the-company's-continuity lingo in discussing provision (e). See id. at 426-27. And as we just noted, the Villeneuve/Avon situation falls within the ambit of provision (e). So her provision-(f)-centric theory carries no weight.[11]

Arguing everything but the proverbial kitchen sink, Villeneuve also complains that much of the evidence Avon offered — especially concerning its financial condition — constituted inadmissible hearsay. Whether this is so we need not decide because, as we just discussed, Avon's defense under provision (e) requires *no* evidence of dire financial circumstances. Rather, it merely requires proof that the employer let the employee go in a *bona fide* reorganization. And on that front, we have these paragraphs from Miranda's statement made under penalty of perjury (pursuant to 28 U.S.C. § 1746), which drew no hearsay challenge from Villeneuve:

> 11. I decided that as part of achieving the required savings [for Avon Puerto Rico], the Caribbean Business would be restructured. . . . Therefore, the position of Caribbean [CCC] would be eliminated. I believed that the workload associated with the position at that time was not enough to justify its salary, and

---

[11] The district judge concluded that Avon conducted its reorganization under provisions (e) *and* (f). But given our ability to affirm the judge on any basis supported by the record, see Collazo-Rosado, 765 F.3d at 92, we can and do ground our decision on provision (e).

the duties could be successfully consolidated with other positions.

12. In addition, amongst others, as part of the reorganization I decided to terminate one [CCC] position, corresponding [to an employee] who was . . . 29 years old at the time.

See generally In re Martínez-Cátala, 129 F.3d 213, 218 (1st Cir. 1997) (explaining that such a statement "has the same effect as an affidavit"). Avon used these paragraphs in crafting its statement of uncontested facts, again without triggering a hearsay challenge from Villeneuve. See generally Vélez v. Awning Windows, Inc., 375 F.3d 35, 41-42 (1st Cir. 2004) (holding that a court must take facts in the moving party's statement of uncontested facts as "true" if the opposing party does not object). Ultimately, these aspects of Miranda's testimony show Avon "had a reasonable basis to believe" Avon Puerto Rico needed a reorganization, see Pérez, 804 F.3d at 9 — thus supporting the *bona fides* of that reorganization and bringing the case's situation within the provision (e) example of just cause listed in Law 80, see Zapata-Berríos, 189 P.R. Dec. at 426 (stressing that provision (e) lets employers change how they do "business through some type of change directed to optimizing [their] resources and increasing the profits, be it [by] eliminating positions, creating others new or merging some already existing as a vehicle to face financial or competition problems, as long as it is a *bona fide* restructuring").

- 24 -

Hence, Villeneuve's hearsay arguments cannot carry the day for her.

As a fallback, Villeneuve thinks Miranda lacked personal knowledge about these facts. But we think otherwise. We say this because paragraph 28 of Avon's statement of uncontested facts provides: "Commercial Director for Avon in Puerto Rico, Rodrigo Echeandía, met with . . . Miranda[] to discuss the reorganization . . . ." And paragraph 30 adds: "Miranda was tasked with reaching savings totaling $300,000.00 in the Customer Care Department."

Enough then about hearsay personal knowledge.

Contending that the Caribbean CCC and the CCC jobs were one and the same, Villeneuve next argues that Avon violated Law 80 by firing her even though she had more seniority than some of the CCCs Avon did not fire. Not so, we conclude.

Law 80, recall, declares that if an employer fires an employee for a restructuring reason like that found in provision (e), then "the employer must give preference to those employees with greater seniority over those with less seniority within the same occupational classification." See Carrasquillo-Ortiz, 812 F.3d at 196. While the parties agree on little else, they agree that in sorting out a job's occupational classification, an inquiring court must focus on factors like:

> (i) the functions and duties of the position; (ii) the
> requirements for filling the position, including the

- 25 -

necessary knowledge and skills as well as the academic background; (iii) [the] manner of compensation[;] and (iv) the way in which the work is performed.

See Díaz Fontánez v. Wyndham Hotel Corp., 155 P.R. Dec. 364, 371 n.12 (2001) (certified partial translation provided by Avon, district court docket entry number 56-1).

Silhouetted against this precedential backdrop, the summary-judgment record adequately supports the conclusion that the Caribbean CCC and the CCC posts were not within the same occupational classification, despite both being part of the Call Center. We say this because: (i) the Caribbean CCC had to deal with emails from Caribbean representatives, make past-due calls, send reminders of special Caribbean events, and provide field support — the CCC had none of these duties; (ii) the Caribbean CCC had to have an associate's degree in communications or administration plus be bilingual — the CCC had neither requirement; (iii) the Caribbean CCC had a higher salary than the CCC; and (iv) the Caribbean CCC had to travel outside Puerto Rico — again, the CCC had no such requirement. Yes, Villeneuve sometimes did tasks that CCCs did. And sometimes persons from a temp agency worked temporarily as CCCs and covered for her when she was absent — Anna Ovalle was one such person. Even so, "Avon deemed the Caribbean [CCC] position as separate and distinct from the [CCC] position" — a quote lifted from statements made by Department-Head

- 26 -

Miranda and Human-Resources-Manager Cifuentes, made under penalty of perjury.[12]

Unfazed, Villeneuve thinks she should still win on this issue because "there is no contemporaneous evidence with the reorganization in question that Avon performed any analysis as to the alleged occupational classification differentiation." But hers is a one-sentence suggestion (which she basically repeats in her reply brief), made with no supporting authority, and so is waived. See, e.g., Mount Vernon Fire Ins. Co. v. VisionAid, Inc., 875 F.3d 716, 727 n.11 (1st Cir. 2017); Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 43 (1st Cir. 2017) (finding that a litigant "waived" an "argument by failing to cite any authority whatsoever in support of his conclusory assertion").

Having debunked Villeneuve's many Law 80-based arguments, we end this longish part of our opinion by upholding the judge's decision to grant summary judgment for Avon on her unjust-discharge claim.

---

[12] Cifuentes did not make any force-reduction decisions — Miranda did, but only for the Customer Care Department. The department heads, though, had to tell Cifuentes which positions in their departments would be affected.

*Age-Discrimination Claim*

Villeneuve showed Avon actually terminated her employment. And, as now relevant, she alleged Avon discharged her because of her age. But as we just explained, Avon showed it had just cause for acting as it did. So the burden fell on her to show Avon's given reason was a pretext for age discrimination. See García-García, 878 F.3d at 423; Pérez, 804 F.3d at 8 n.4. She makes several potential pretext arguments. But they all come up short.

For example, Villeneuve contends that no *bona fide* workforce reduction occurred because Avon did not eliminate the Caribbean CCC post — rather, she says, Avon simply replaced her with Anna Ovalle, who was much younger than she was. So, she goes on, Avon's stated ground for the firing was a pretextual cover for age discrimination. Color us unconvinced. Ovalle — a temporary employee from a temp agency who had previously covered for Villeneuve during Villeneuve's vacations — did perform Villeneuve's old duties after the firing, while also performing "those of a [CCC]." But — and it is big "but" — Ovalle did this during a transition period in which Avon worked on distributing Villeneuve's former responsibilities to other Avon employees, "the Specialist for District Managers and the WEB Specialist, with support from the Campaign Administration Area," to quote Miranda's

- 28 -

statement. Which kiboshes Villeneuve's Avon-replaced-me-with-Ovalle thesis.

Somewhat relatedly, Villeneuve asserts that Avon's reorganization reason was pretextual because Avon's explanation of what happened to her duties after the firing shifted over time. For support, she points to Avon's response to interrogatory number 14 — an interrogatory that asked Avon to "[i]dentify the employee and/or employees" who "perform[ed] all and/or some of the duties [she] performed . . . as Caribbean [CCC]." Responding, Avon first objected because the interrogatory did "not specify" a "time period." And then Avon answered that after her termination "due to the reorganization," Villeneuve's "duties were distributed to, and absorbed by, Francisca Mendoza, District Sales Manager Specialist, and Carmen Rivera, former Web Specialist, as backup to Francisca Mendoza." Basically yelling "Gotcha!" at Avon, Villeneuve asserts that the deposition of a former supervisor shows a contradiction because the supervisor testified that Ovalle performed Villeneuve's duties for some (unspecified) time. But we see no contradiction because, as Miranda explained, Ovalle simply filled in while Avon transitioned those duties to others.

Ever persistent, Villeneuve also complains that some temporary employees from the temp agency made "water cooler comments" about her age — for instance, one time, after she said

she did not like singer and Avon spokesperson "Fergie" (then of the group "the Black Eyed Peas"), they said she was "an old lady" who "listen[s] to the Bee Gees."  And when she talked to her supervisors about this, they said, "Well, there is a generation gap," adding "these guys have kids" and "[y]ou have grown-ups."[13] But the kicker for her is that none of these people had a part in the firing decision.  And she makes no case-based effort to explain how these non-decisionmakers' remarks are sufficient to prove pretext.  See González, 304 F.3d at 69 (emphasizing that "stray workplace remarks, as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus" (internal quotation marks omitted)).  We thus deem this facet of her pretext argument waived for lack of development.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Still searching for a persuasive pretext theory, Villeneuve writes that right before she got fired, she "notice[d]" that Avon "had been hiring younger people and firing older people." The "people" she is referring to are or were temporary employees.

---

[13] Labeling the comment-makers "immature," these supervisors also told Villeneuve to pay no mind to them — advice she herself called "wise."

Anyway, conspicuously absent from her is any indication of the applicant pool — we do not know, for example, whether older workers even applied for these positions. See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 848 (1st Cir. 1993) (emphasizing that "the fact that recently hired [employees] are younger than [the plaintiff] is not necessarily evidence of discriminatory intent, but may simply reflect a younger available work force"). Also conspicuously absent from her is any mention of the circumstances surrounding the firings. Which devastates this aspect of Villeneuve's pretext theory, given that she cannot defeat a summary-judgment motion with "conclusory allegations" or "unsupported speculation." See Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990); see also Gómez v. Stop & Shop Supermarket Co., 670 F.3d 395, 398 (1st Cir. 2012) (holding that "[a]ssumptions" made in a brief "are not a substitute for evidence" needed to avoid summary judgment).

With Villeneuve's pretext arguments out of the way, we uphold the judge's decision to grant summary judgment for Avon on her age-discrimination claim.

## FINAL WORDS

Having found Villeneuve's arguments wanting, we affirm the judge's rulings dismissing her sexual-orientation-discrimination claim and granting summary judgment for Avon on her

unjust-discharge and age-discrimination claims.  We also award

Avon its costs on this appeal.  <u>See</u> Fed. R. App. P. 39(a)(2).