UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Salform Inc.

    v.                                                     Civil No. 19-cv-796-LM
                                                                              Opinion No. 2020 DNH 132
Anvil International, LLC


**O R D E R**

Plaintiff Salform Inc. ("Salform") brings this action against defendant Anvil International, LLC ("Anvil"), alleging Anvil's failure to make payments due under its contract with Salform's predecessor in interest. Salform asserts Anvil's liability for breach of contract and for unjust enrichment. Alleging Salform's failure to perform its obligations under the contract, Anvil asserts counterclaims under New Hampshire common law for breach of warranty, indemnity, and misrepresentation, and under New Hampshire's Consumer Protection Act for deceptive trade practices.

Four motions are now before the court. First, Anvil moves for judgment on the pleadings as to Salform's claims against it, on the sole ground that Salform is not the real plaintiff in interest. Doc. no. 17. Second, Salform moves for leave to amend its complaint to add two new causes of action. Doc. no. 18. Third, Anvil moves for leave to file a third-party

complaint against Salform's principal.  Doc. no. 27.  Fourth and finally, Anvil moves to strike Salform's surreply (doc. no. 26) in support of its opposition to Anvil's motion for judgment on the pleadings.  Doc. no. 28.

## BACKGROUND[1]

Plaintiff Salform is a Connecticut corporation with its principal place of business in Connecticut.  Salform alleges that it is "the successor to . . . Salamon Industries," an unincorporated business entity owned and operated by Andrew Salamon ("Salamon").  Doc. no. 1, ¶ 6.  Like Salform, Salamon Industries maintained its principal place of business in Connecticut.  At all material times, Salform and/or Salamon Industries were in the business of selling machine tools for metal forming and metal working.

Defendant Anvil is a Delaware corporation with its principal place of business in New Hampshire.  Anvil is the corporate parent of Beck Manufacturing ("Beck"), a Pennsylvania corporation which operates a manufacturing plant in Waynesboro, Pennsylvania.

---

[1]  Except as otherwise noted, the recitation that follows is the court's summary of the parties's allegations construed in the light most favorable to Salform, in accordance with the legal standard governing motions for judgment on the pleadings, discussed infra.

2

In September 2017, acting on behalf of Salamon Industries, Salamon visited Beck's Waynesboro plant for the purpose of negotiating an agreement. Salamon proposed either to sell a new metal tapping machine to Beck or to retrofit a tapping machine that Beck already owned, to permit automation of its functions.

Following initial negotiations, Salamon sent Beck two alternative proposals, one for a proposed sale transaction and one for a proposed retrofitting transaction. Under the sale proposal, Salamon Industries would sell Beck a new metal tapping machine for a purchase price of $298,000. Under the retrofitting proposal, Salamon Industries would sell Beck an 8-station indexing table and a pneumatic feeder for $168,134, and would install those parts on Beck's existing machine to automate Beck's metal tapping process for an additional $124,000 (or a total price of $292,134). Salamon advised Beck that it would be more prudent to purchase a new machine than to retrofit an existing machine.

In February 2018, Beck offered to purchase the indexing table and the pneumatic feeder, without any installation or retrofitting. Following further negotiations, Salamon offered to provide technical and installation support to assist Beck in retrofitting its machine for an additional $15,000. On February 19, 2018, Anvil (as Beck's corporate parent) sent Salamon Industries a purchase order (the "Purchase Order") for the

3

indexing table and pneumatic feeder (for $168,134), as well as technical and installation support (for an estimated $15,000).

The second page of the Purchase Order contained a lengthy recital, in fine print, of terms and conditions. Among its stated terms and conditions, the Purchase Order contained a provision (the "anti-assignment provision") prohibiting the "Seller" from assigning or transferring rights under the Purchase Order "without written consent of Buyer." Doc. No. 1-3 at 2. The Purchase Order further provided that it would be "governed by and construed in accordance with the laws of the State of New Hampshire (without giving effect to conflict of law principles)." Id. It additionally contained a forum selection provision specifying the United States District Court for the District of New Hampshire for resolution of disputes between the contracting parties. Id.[2]

Salamon Industries sent Beck a formal written acknowledgment of the Purchase Order (the "Acknowledgment"). The Acknowledgment expressly stated that Salamon Industries would provide the goods and services specified in the Purchase Order by July 9, 2018. Although the parties dispute whether Salamon Industries agreed to be bound to the terms and

---

[2] In final relevant part, the Purchase Order contained a warranty provision and an indemnity provision, the alleged breach of which forms the basis of two of Anvil's counterclaims.

4

conditions set forth in Anvil's Purchase Order, they do appear to agree that the forms exchanged in February 2018 (or a subset of them) memorialized a contract (the "February 2018 agreement") for the provision of goods and services by Salamon Industries to Beck. Salamon Industries thereafter invoiced Beck for $91,567, or 50% of the total price referenced in the Purchase Order. Anvil paid the invoiced amount.

Salform alleges that, in or around late spring or early summer of 2018, it "was incorporated" as Salform, Inc. Doc. no. 1, ¶ 20. It is unclear from the parties' allegations at what time Anvil or Beck became aware of Salform's incorporation or of the distinction between Salform and Salamon Industries. No party alleges that Anvil or Beck at any time objected to Salform's performance of Salamon Industries's contractual obligations.

In August 2018, employees of Salform made a site visit to Beck's Waynesboro facility to provide the technical and installation support that Salamon Industries had promised. In the course of their visit, Salform's employees determined that Beck's existing metal tapping machine had been modified from its original condition in such a way as to make it unsuitable for the contemplated retrofitting. Salform advised Beck that due to these modifications, significant unanticipated additional labor would need to be performed on Beck's machine before the

5

retrofitting could be accomplished. Salform further advised Beck that, even after that additional labor was performed, it would not be possible to automate the machine's processes fully. Beck agreed to permit Salform to perform the additional work and shipped the machine to Salform's Connecticut headquarters for that purpose.

After Beck shipped its machine to Salform's facility, Salform repeatedly missed deadlines for completion of the contemplated work. Ultimately, however, Salform modified Beck's machine to permit installation of the indexing table and pneumatic feeder. Salform also performed additional repairs to the machine that were unrelated to the contemplated retrofitting but were necessary to permit the machine to operate appropriately. The value of the unanticipated work performed on Beck's machine, including the repair work, was $20,000.[3] Salform completed the work in December 2018, and returned the machine to Beck.

Beck completed the retrofitting in January 2019 by installing the indexing table and pneumatic feeder. The installation did not result in full automation of the machine's

---

[3] Anvil's failure to compensate Salform for this unanticipated work (noted below) is the subject of Salform's unjust enrichment claim.

processes.  Beck incurred significant costs in further unsuccessful efforts to fully automate its machine.

Anvil has not paid either the $91,567 still due and owing under the February 2018 agreement or the $20,000 for the additional work performed on Beck's machine.  Salform alleges breach of contract in the amount of $91,567 and unjust enrichment in the amount of $20,000.  Anvil alleges breach of warranty, indemnity, misrepresentation, and deceptive trade practices, and seeks economic damages in an unspecified amount.

**DISCUSSION**

I.   Anvil's Motion for Judgment on the Pleadings

Anvil argues that it is entitled to judgment on Salform's claims on the face of the pleadings because, as a matter of law, Salform is not the real party in interest.  See Fed. R. Civ. P. 17 ("[a]n action must be prosecuted in the name of the real party in interest").  Anvil asserts that Salform cannot prevail on its claims because it has pled neither that it was an original party to the contract with Anvil nor that Salamon Industries effectively assigned its rights and obligations under the February 2018 agreement to it.  Anvil further argues that, even if Salform had pled such assignment, the assignment would be void as a matter of law pursuant to the anti-assignment provision of the Purchase Order.  In response, Salform argues

7

that it is ascertainable on the face of the pleadings that it is the real plaintiff in interest.[4]

A.   Legal Standard

Motions for judgment on the pleadings are governed by Federal Rule of Civil Procedure 12(c).  Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.  See Beal v. Missouri Pac. R. R. Corp., 312 U.S. 45, 51 (1941).  In evaluating a motion for judgment on the pleadings, the court views the facts presented in the pleadings, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion.  See Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 140 (1st Cir. 2016); Feliciano v. State of R.I., 160 F.3d 780, 788 (1st Cir. 1998).  Moreover, all of the allegations of the non-moving party are credited as true,

---

[4]  As noted, Anvil argues that the parties' dispute is governed by New Hampshire law, whereas Salform seeks application of Connecticut law.  The court need not resolve the conflict for purposes of this order, however, because as the analysis below establishes, the same result would obtain under the law of either jurisdiction.

8

whereas those allegations of the moving party which have been denied are deemed false. See Villeneuve v. Avon Prod., Inc., 919 F.3d 40, 49 (1st Cir. 2019). In effect, the standard for resolving a motion for judgment on the pleadings under Rule 12(c) is identical to that applicable to a motion to dismiss brought under Federal Civil Procedure Rule 12(b)(6), except that a Rule 12(c) motion implicates the allegations of all of the pleadings rather than those of the complaint alone. See Aponte-Torres v. Univ. Of Puerto Rico, 445 F.3d 50, 55 (1st Cir. 2006).

Pursuant to Federal Civil Procedure Rule 12(d), "[i]f . . . matters outside the pleadings are presented to and not excluded by the court," the court must convert a Rule 12(c) motion to one for summary judgment under Federal Civil Procedure Rule 56.[5] Fed. R. Civ. P. 12(d); see also Feliciano, 160 F.3d at 788. Under that circumstance, the court must grant all parties adequate opportunity to conduct discovery and to present material evidence. See id.

---

[5] Here, Salform offers evidence in support of its objection to Anvil's motion, namely Salamon's declaration. The declaration is attached as an exhibit to Salform's surreply (doc. no. 26); the surreply and attached declaration are the subject of Anvil's motion to strike. The court finds that it can resolve the motion for judgment on the pleadings without need to consider Salform's proffered evidence, and therefore excludes it. Anvil's motion to strike the surreply and attached exhibit is accordingly denied as moot.

B.   Analysis

The parties are in agreement that Salform was not an original party to the February 2018 agreement.  However, it does not follow that Salform can only sue for breach in its own name if it is Salamon's assignee.  In fact, Salform's theory is not that it is Salamon's assignee but rather that it is the successor in interest to Salamon Industries' rights under the agreement.

Succession and assignment are not synonymous.  A corporate successor in interest takes the place of its predecessor by operation of law, thereby becoming invested with the predecessor's rights and assuming the predecessor's burdens. See 15 Fletcher Cyc. Corp. ("Successors" and "succession") § 7203; see also id. at n 1, n 3.  Assignment, by contrast, is a contractual agreement between two parties whereby one party voluntarily transfers all or some of its rights and/or obligations to the other in exchange for consideration.  See 6A C.J.S. (Assignments) § 1.  Because succession and assignment are distinct concepts, a provision prohibiting assignment will not operate to prevent succession, which occurs independently of any assignment agreement.[6]  See, e.g., Pratte v. Balatsos, 99 N.H.

---

[6]  Any contrary holding would necessarily invite mischief. If an anti-assignment provision could bar succession, then a party to a contract containing such a provision could escape its

10

430, 434-435 (1955) (as a matter of New Hampshire law, a successor in interest is bound by its predecessor's contracts in the absence of assignment); In re Bachand, 306 Conn. 37, 55 (2012) (as a matter of Connecticut law, succession occurs by operation of law, without regard to "the act or cooperation" of the predecessor or successor). Accordingly, it is commonplace for corporate successors to bring actions in their own name to enforce the contracts of their predecessors, including in the absence of any assignment agreement. See, e.g., EnergyNorth Nat. Gas, Inc. v. Certain Underwriters at Lloyd's, 156 N.H. 333, 335 (2007) (applying New Hampshire law); Celentano v. Oaks Condo. Ass'n, 265 Conn. 579, 582, 582 n. 2 (2003) (applying Connecticut law).

To survive Anvil's motion, Salform must adequately allege that it is the successor in interest of Salamon Industries. In determining whether Salform's allegations are adequate, the court looks to the law of the state of Salform's incorporation. See, e.g., Chi. Title & Tr. Co. v. 4136 Wilcox Bldg. Corp., 302 U.S. 120, 124-125 (1937) (questions of corporate status are governed by the law of the state in which the entity was

---

obligations by the simple expedient of reincorporating under a new name.

incorporated).  Salform was incorporated in Connecticut; thus Connecticut law governs this question.

As a matter of Connecticut law, when a previously unincorporated business entity (such as Salamon Industries) incorporates, and thereafter carries on the operations of the former unincorporated entity, the new corporation is treated as the successor to the unincorporated business.  See, e.g., Canton Motorcar Works, Inc. v. DiMartino, 6 Conn. App. 447, 452-455 (1986); D.D.J. Elec. Contractors, Inc. v. Nanfito & Sons Builders, Inc., 40 Conn. Supp. 50, 52 (1984).  As a matter of law, the successor corporation may sue in its own name on a contract entered into by the unincorporated predecessor.  Id.

Here, Salform alleges that it is "the successor" to Salamon Industries, the unincorporated business entity that originally contracted with Anvil.  Doc. no. 1, ¶ 6.  Salform alleges that after it "was incorporated" as Salform Inc., its employees continued carrying out Salamon Industries's obligations under the February 2018 agreement.  Id., ¶ 20.  Read in the light most favorable to Salform, these allegations are adequate to support the conclusion that Salform is Salamon Industries's successor in interest and, therefore, the real plaintiff in interest.

For these reasons, Anvil's motion for judgment on the pleadings is denied.

II.  Salform's Motion for Leave to Amend

Salform seeks leave to amend its complaint to state a second claim for breach of contract and a claim under Connecticut's Unfair Trade Practices Act for deceptive trade practices.  Anvil objects to Salform's motion on futility grounds.  Specifically, Anvil argues that amendment would be futile as to both claims because Salform is not the real plaintiff in interest, and futile as to the deceptive trade practices claim because the parties agreed that any dispute arising out of their contract would be governed by New Hampshire law.

Anvil's argument that Salform is not the real party in interest is unavailing for the reasons stated above.  And its remaining argument—that the proposed statutory claim would not lie because New Hampshire law governs—is premature.  At this early stage of these proceedings, and in the absence of a developed evidentiary record, the court cannot find as a matter of law that Salamon Industries agreed to be bound by the terms and conditions of Anvil's Purchase Order, or that the parties's dispute is otherwise necessarily governed by New Hampshire law.

For these reasons, Salform's motion to amend its pleading is granted.  Anvil may raise its choice-of-law arguments again, with supporting evidence, at a later stage of these proceedings.

13

III. Anvil's Constructive Motion for Joinder

Anvil seeks leave under Federal Rule of Civil Procedure 14(a) to file a third-party complaint against Salamon containing the identical claims it has already asserted as counterclaims against Salform. Anvil's motion is premised on the same theory as its motion for judgment on the pleadings, namely that it entered the February 2018 agreement with Salamon (doing business as Salamon Industries), and that Salamon lacked authority to assign his rights and obligations under that agreement to Salform. Therefore, Anvil argues, its claims lie against Salamon rather than against Salform.

Anvil has chosen the wrong procedural mechanism for what it hopes to accomplish. Rule 14(a) provides that "[a] defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to [it] for all or part of the plaintiff's claim against [it]." Fed. R. Civ. P. 14(a) (emphasis supplied). That is, Rule 14(a) governs impleader, whereby a defending party may implead a non-party who may be jointly or severally liable to it on the claims against the party. See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 368 n. 3 (1978); see also Metro. Life Ins. Co. v. Ditmore, 729 F.2d 1, 9 (1st Cir. 1984). Here, Anvil seeks to bring its own independent claims against Salamon, not to assert that, if

14

it were found liable on Salform's claims, Salamon would in turn be liable to it on those same claims.

The procedural mechanism appropriate to the outcome Anvil seeks is joinder.  Specifically—because Salamon is not a "required party" who claims an interest in the action or whose absence would otherwise prevent the court from according complete relief, see Fed. R. Civ. P. 19(a)(1)—the appropriate mechanism is permissive joinder of a defendant pursuant to Federal Civil Rule of Civil Procedure 20(a)(2).  The court therefore construes Anvil's motion as a Rule 20(a)(2) motion for permissive joinder.[7]

A.    Legal Standard

Rule 20(a)(2) provides that defendants may permissively be joined if:

(A)   any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B)   any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

---

[7]   In its reply memorandum, Anvil requests—without analysis of the elements of Rule 20—that its motion be construed alternatively as a motion for joinder.

15

B.   Analysis

Both elements required under Rule 20(a)(2) are clearly present here.  Anvil intends to state precisely the same set of claims against both Salform and Salamon, arising out of precisely the same set of circumstances.  Anvil's theory is that its claims lie against Salamon as the originally contracting party, but in the alternative, in the event Salform succeeded to Salamon Industries's obligations under the February 2018 agreement, that they lie against Salform as successor in interest to Salamon's unincorporated business entity.  Anvil thus seeks to assert alternative claims arising out of the same facts and governed by the same law against the two potential defendants.  Joinder is therefore appropriate under Rule 20(a)(2).  See, e.g., Arista Records LLC v. Does 1-27, 584 F. Supp. 2d 240, 251 (D. Me. 2008).

Salform argues that it would nevertheless be futile to permit Anvil to plead claims against Salamon, because Salamon's obligations to Anvil were extinguished when Salform succeeded to Salamon Industries's rights and obligations under the February 2018 agreement.  Salform further argues that claims against Salamon are necessarily futile because this court lacks personal jurisdiction over him.  The court disagrees.

First, the court's disposition of Anvil's motion for judgment on the pleadings was made solely on the basis of the

16

parties's allegations, construed in the light most favorable to Salform. The court has made no factual findings in this case, including as to Salform's status as successor in interest to Salamon Industries. The possibility has not been foreclosed that Anvil could establish through evidence that Salamon was at material times a party to the February 2018 agreement. In short, Anvil's proposed claims against Salamon are not futile.

Second, it is not apparent on the face of Anvil's allegations that this court would lack personal jurisdiction over Salamon. Anvil has pled that Salamon agreed to the New Hampshire forum selection provision contained in the Purchase Order. It is well established that consent to a forum selection clause constitutes waiver of the right to challenge personal jurisdiction in the selected forum. See, e.g., The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10-12 (1972). Thus, if the truth of Anvil's allegations were established, this court would likely have personal jurisdiction over Salamon.

For these reasons, Anvil's constructive motion for joinder is granted. In the event Salamon wishes to contest personal jurisdiction in this forum he may do so through either a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) or a motion for summary judgment.

17

## CONCLUSION

For the reasons discussed above, Anvil's motion for judgment on the pleadings (doc. no. 17) is denied; Salform's motion for leave to amend its complaint (doc. no. 18) and Anvil's constructive motion for joinder (doc. no. 27) are granted; and Anvil's motion to strike (doc. no. 28) is denied as moot.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 28, 2020

cc:  Counsel of Record